OPINION
{¶ 1} Defendant-appellant, Willie Cotton, Jr., appeals his convictions and sentence in the Butler County Court of Common Pleas for burglary and theft.
 {¶ 2} Appellant was indicted in December 2002 on one count of burglary and one count of aggravated theft. The charges stemmed from an incident that occurred the first week of November 2002 wherein appellant, along with Jason Wilson ("Jason") and Michael Brumett ("Michael"), allegedly broke into the residence of Julie Marlow in Hamilton, Ohio and stole a significant amount of jewelry and a video camera. A jury trial was held on April 22, 2003. Right before trial, the aggravated theft charge was amended from a third-degree felony to a fifth-degree felony theft charge. The parties also stipulated that the value of the stolen property was more than $500. The amendment and stipulation were reflected in an amended indictment entry filed on May 2, 2003.
 {¶ 3} At trial, the state presented the testimony of the victim Julie Marlow, Jason, Tianadda Shepherd ("Tia"), Jeremy Brown ("Jeremy"), and Detective Jim Calhoun of the Hamilton Police Department. Jason and Jeremy were friends of appellant. Tia was Jeremy's girlfriend.
 {¶ 4} In 2002, Julie Marlow and her daughters, Jessica and Jill, lived in a townhouse on Eaton Avenue in Hamilton, Ohio. Appellant was a friend of Jessica. As a result, he had been in the home several times and had even spent the night on two occasions. Julie Marlow testified that she would allow her daughters and their friends to use the computer in her master bedroom where she kept her jewelry in a box and the video camera in a closet. Following an incident in August 2002, Julie Marlow forbade her daughters to be around appellant who was no longer welcome in her house. One evening in the first week of November 2002, the whole family was preparing to leave the next day for a vacation in Atlanta. Unbeknownst to Julie Marlow and without her permission, appellant came to visit Jessica. While there, he intentionally left a window open.
 {¶ 5} One evening later in the week, appellant, Jason, and Michael were "hanging out" in Jason's apartment. Appellant told Jason and Michael he knew of a house with a lot of jewelry and that the people living there were gone on vacation. All three men agreed to rob the Marlow house. To make sure the Marlow family was still in Atlanta, appellant called Jill's cellular phone. The family was, in fact, still in Atlanta. The three men then changed into dark clothes and put on latex gloves. Tia and Jeremy, who were by then in the apartment, both testified that appellant, Jason, and Michael had dark clothes and latex gloves. Julie Marlow testified that appellant did not have her permission, while she was on vacation, to be in her house or to take anything from the house.
 {¶ 6} The original plan was that Jason and Michael would remain outside of the Marlow house as lookouts, while appellant would go in since he knew where everything was. The plan was changed however and both appellant and Jason went in the house. Appellant entered the house first through a window and Jason followed. Once inside, appellant directed Jason to get a video camera from the closet of the bedroom they were in. Meanwhile, appellant took jewelry from a box in the bedroom. The two men then left the house through the window they had used to get in. Appellant, Jason, and Michael returned to Jason's apartment. Tia and Jeremy were still there. Appellant told Tia the jewelry came from a friend's house who was out of town, and that he had left a window open so they could get in.
 {¶ 7} At the apartment, appellant, Jason, and Michael took turns to divide the jewelry between them. Tia and Jeremy took some of the leftover jewelry even though they knew it was stolen. Jason used the video camera that night. The tape used by Jason, which also came from the Marlow home, shows appellant wearing a large amount of jewelry. It also shows footage of the Marlow family's previous vacation in Panama City, Florida.
 {¶ 8} On November 9, 2002, upon returning from vacation, Julie Marlow discovered her home had been burglarized. A large amount of rings, bracelets, and necklaces had been stolen. She also later discovered the video camera was missing. The following week, a remorseful Tia went to the police department and turned in a large quantity of jewelry. After Julie Marlow identified the jewelry as hers, Det. Calhoun had Tia come in. Tia gave statements about the jewelry's provenance. Jeremy subsequently turned in a couple of rings. Det. Calhoun then executed search warrants at the homes of Michael, with whom appellant was staying at the time, and Jason. The police recovered jewelry at both homes and a video camera at Jason's apartment. Julie Marlow identified the video camera and some of the jewelry as hers.
 {¶ 9} On April 22, 2003, a jury found appellant guilty of burglary in violation of R.C. 2911.12(A)(3) and theft in violation of R.C. 2913.02(A)(1). The trial court sentenced appellant to a five-year prison term on the burglary count, the maximum term for a third-degree felony, and to a concurrent one-year prison term on the theft count. This appeal follows in which appellant raises four assignments of error which will be addressed out of order.
 {¶ 10} In his fourth assignment of error, appellant argues that his convictions were against the manifest weight of the evidence. Appellant contends that the state failed to show beyond a reasonable doubt that he was involved in the burglary and theft of Julie Marlow's home.
 {¶ 11} A challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. State v.Thompkins, 78 Ohio St.3d 380, 386-387, 1997-Ohio-52. "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id. at 387.
 {¶ 12} An appellate court will not reverse a judgment as being against the manifest weight of the evidence in a jury trial unless it unanimously disagrees with the jury's resolution of any conflicting testimony. Id. at 389. When reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 13} At trial, the jury heard the testimony of a participant in the crimes, Jason, and of two witnesses to the events before and after the crime, Tia and Jeremy. The testimony of these three witnesses was very consistent with regard to appellant's knowledge of a house with a lot of jewelry and out-of-town residents, appellant leaving a window open to get in, appellant calling Jill on her cellular phone to make sure the Marlow family was still out of town, appellant wearing dark clothes and latex gloves, and appellant splitting the jewelry with Jason and Michael. Their testimony was corroborated by Julie Marlow who testified that appellant was at her house right before they left for vacation, and that Jill received a phone call from appellant while she was in Atlanta. Their testimony was also corroborated by Det. Calhoun who testified that there were no fingerprints in the Marlow house and that no doors had been broken. Appellant contends that the testimony of Jason, Tia, and Jeremy "varied such that their credibility is in question." While there were some discrepancies in those witnesses' testimony, they only related to whether there was furniture in Jason's apartment (such as a couch), and to Tia's testimony that a fourth individual left and returned with appellant, Jason, and Michael.
 {¶ 14} Upon carefully reviewing the record, we cannot conclude that the jury lost its way and committed a manifest miscarriage of justice in convicting appellant of burglary and theft. Appellant's convictions for burglary and theft are therefore not against the manifest weight of the evidence. Appellant's fourth assignment of error is overruled.
 {¶ 15} In his first assignment of error, appellant argues that his convictions should be reversed because of prosecutorial misconduct during the state's closing argument.
 {¶ 16} The test for prosecutorial misconduct is whether the remarks made by the prosecutor were improper and, if so, whether the remarks prejudicially affected substantial rights of the accused. State v. Smith (1984), 14 Ohio St.3d 13, 14. The touchstone of this analysis is "the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips (1982),455 U.S. 209, 219, 102 S.Ct. 940.
 {¶ 17} Isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning. State v.Hill, 75 Ohio St.3d 195, 204, 1996-Ohio-222, certiorari denied (1996), 519 U.S. 895, 117 S.Ct. 241. Rather, closing arguments must be viewed in their entirety to determine whether the disputed remarks were unfairly prejudicial. State v. Moritz
(1980), 63 Ohio St.2d 150, 157. In reviewing closing arguments, an appellate court must remember that both the defense and the prosecution are afforded wide latitude in their arguments "as to what the evidence has shown and what reasonable inferences may be drawn therefrom." State v. Lott (1990), 51 Ohio St.3d 160, 165, certiorari denied (1990), 498 U.S. 1017, 111 S.Ct. 591. An appellate court must also examine the prosecutor's argument in relation to that of opposing counsel. State v. Wilson, Clermont App. No CA2001-09-072, 2002-Ohio-4709, ¶ 61. A prosecutor's latitude in closing argument is wider on rebuttal where the prosecutor has room to respond to closing argument of defense counsel. Id. at ¶ 67.
 {¶ 18} Appellant first argues that the prosecutor impermissibly vouched for its own witnesses when he stated, on rebuttal, that "You got * * * Jason Wilson, Tianadda Shepherd and Jeremy Brown, all the important facts, maybe not the furniture, but everything else they are consistent. They tell the same story because it's the truth. [Defense counsel] said in his opening he is going to give you the theory, and I told you I will give you the facts. And that's what the facts are." Appellant correctly states that "it is improper for an attorney to express his personal belief or opinion as to the credibility of a witness[.]"
 {¶ 19} We note that appellant did not object to the foregoing comments, thus waiving all but plain error under Crim.R. 52(B). Plain error does not exist unless, but for the error, the outcome of the trial would have been different. Id. at ¶ 62. Notice of plain error is to be taken in exceptional circumstances and only to prevent a manifest miscarriage of justice. Id.
 {¶ 20} A review of the closing arguments clearly indicates that the prosecutor's comments were in direct response to defense counsel's closing argument during which defense counsel questioned and criticized the testimony of Jason, Tia, and Jeremy, the state's witnesses. Upon thoroughly reviewing both the prosecutor's and defense counsel's closing arguments and the prosecutor's rebuttal, and construing the comments in the context of the entire trial, we cannot conclude that but for the comments, the outcome of the trial would have been different. We thus find that the comments did not amount to plain error.
 {¶ 21} Appellant next argues that the prosecutor improperly referred to evidence not in the record when he argued on rebuttal and over defense counsel's objection that Jason, Tia, and Jeremy could not have conspired to place blame on appellant because "Jason has been in jail." Appellant contends that this fact was not in the record. During his closing argument, defense counsel argued that those three witnesses all had dirty hands and an incentive to blame someone else.
 {¶ 22} Contrary to appellant's contention, the prosecutor's reference to Jason being in jail was based on evidence in the record. On direct examination, Jason testified that he was currently in jail and that he was incarcerated on charges arising out of the burglary and theft of the Marlow home. We therefore find that the prosecutor's reference did not amount to prosecutorial misconduct. Appellant's first assignment of error is overruled.
 {¶ 23} In his third assignment of error, appellant argues that the trial court abused its discretion when it responded to a jury question. Appellant contends that the court's response "implied that the court was aware of evidence, outside the then current record, regarding the case" and improperly influenced the jury.
 {¶ 24} After deliberating for over an hour, the jury sent out three questions to the trial court. The first question asked whether appellant was "arrested interviewed or interrogated regarding this crime by the detective or police." The trial court replied: "I am simply not permitted to answer that question. Okay. I cannot answer that question. If the trial was over with, I would be happy to discuss that with you, but I am not permitted to answer that question." Appellant did not object to the trial court's response, thus waiving all but plain error under Crim.R. 52(B). See State v. Cole (Jan. 22, 1997), Hamilton App. No. C-950900.
 {¶ 25} When during the course of its deliberations, a jury requests further instruction, clarification, or information, a trial court has broad discretion in determining how it will respond to the jury's request. State v. Carter,72 Ohio St.3d 545, 553, 1995-Ohio-104, certiorari denied (1995), 516 U.S. 1014,116 S.Ct. 575. "A reversal of a conviction based upon a trial court's response to such a request requires a showing that the trial court abused its discretion." Id.
 {¶ 26} The record shows that the jury's question was the result of a statement made by defense counsel in his closing argument: "What you also don't have in this case is any confession from Willie. You don't have the officer coming in here and saying, yeah, I sat down and interviewed him and [he] confessed to doing this." The trial court's response was no more than a simple statement that it could not answer a question regarding the facts of this case.[1] Based upon the record, we cannot say that the trial court abused its discretion or that its response amounted to plain error. Appellant's third assignment of error is overruled.
 {¶ 27} In his second assignment of error, appellant argues that it was error for the trial court to impose the maximum prison term for the burglary count when this was not the worst form of the offense ("appellant waited until the victims were out of town"), appellant has never been in prison, and appellant did not pose the highest likelihood of recidivism.
 {¶ 28} Appellant cites R.C. 2929.14(B) which requires a trial court to impose the minimum prison term upon an offender unless the court "finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." R.C. 2929.14(B)(2). However, R.C. 2929.14(B) does not apply if the trial court imposes a maximum sentence, instead implicating R.C. 2929.14(C). See State v. Tittle, Clinton App. No. CA2002-08-032, 2003-Ohio-4002.
 {¶ 29} Before imposing a maximum prison sentence, the trial court must find that the offender committed the worst form of the offense, the offender poses the greatest likelihood of committing future crimes, the offender is a "major drug offender," or the offender is a "repeat violent offender." R.C. 2929.14(C). When imposing a maximum sentence, the trial court is required to give its reasons for imposing such a sentence. R.C. 2929.19(B)(2)(d). The sentencing court must make its findings regarding maximum sentences and give the reasons for those findings on the record at the sentencing hearing. State v. Meenach, Madison App. No. CA2003-04-017, 2004-Ohio-1864, ¶ 5, citing State v. Comer,99 Ohio St.3d 463, 2003-Ohio-4165, and State v. Newman,100 Ohio St.3d 24, 2003-Ohio-4754.
 {¶ 30} At the sentencing hearing, the trial court stated that appellant's crime "is the worst form of this offense; [and] that you are likely to commit, in my opinion, future crimes[.]" We find that the trial court made the necessary statutory finding for imposing a maximum sentence in compliance with R.C.2929.14(C). As long as it is clear from the record that the trial court made the required finding, the trial court need not use the exact language of the statute. State v. Hollander (2001),144 Ohio App.3d 565, 569. During the sentencing hearing, the trial court also stated its reasons for imposing the maximum sentence.
 {¶ 31} The trial court's reasons were preceded by Julie Marlow's statements to the court in which she described appellant as a friend of her daughters who had eaten, watched television, and been on the computer while at her house. Julie Marlow related how this "calculated, thought-out, let's-verify-the-family's-whereabouts-and-don-our-black-cloth- and-surgical-gloves crime" had caused an incredible amount of stress, pain, sleeplessness, and nightmares, as well as a substantial financial loss of over $100,000 and the loss of sentimental items that could not be replaced.
 {¶ 32} Before stating its reasons for its sentence, the trial court first noted how, following an 1998 conviction in juvenile court, appellant subsequently violated his probation 12 times; how after appellant raised bond, he was subsequently arrested on two different occasions for drug abuse and driving under suspension; and the fact that the burglary and theft were committed while appellant was on probation. The trial court then stated its reasons:
 {¶ 33} "Court will tell you that the Court imposed the longest term because, in the Court's opinion, specifically based upon the fact that the one burglary where the Court gave you the maximum sentence, you stole over $111,000; that, as mentioned by the victim in this case, this was particularly egregious in that it was well thought-out, well executed."
 {¶ 34} We find that these reasons adequately support the trial court's finding that appellant committed the worst form of the offense. The trial court therefore complied with R.C.2929.19(B)(2)(d) and relevant case law. The trial court did not err by imposing a maximum sentence of five years following appellant's burglary conviction. Appellant's second assignment of error is overruled.
Judgment affirmed.
Powell and Valen, JJ., Concur.
[1] Another question from the jury asked "What did the Grand Jury need to bring this case to trial?" As it did for the first question, the trial court replied that "again, I would be happy to answer that question after you have reached the verdict, but I can't answer that now, okay." Appellant did not challenge that answer on appeal.