[Cite as *State v. Clarke*, 2016-Ohio-7187.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO.  CA2015-11-189 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 10/3/2016 |
| - vs - | | |
| | : | |
| RONALD L. CLARKE, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR15-05-0818


Michael T. Gmoser, Butler County Prosecuting Attorney, Willa Concannon, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Peter Link, 810 Sycamore Street, 5th Floor, Cincinnati, Ohio 45202, for defendant-appellant


**RINGLAND, J.**

{¶ 1} Defendant-appellant, Ronald Clarke, appeals the denial of his motion to suppress and his conviction in the Butler County Court of Common Pleas for attempted abduction.  For the reasons detailed below, we affirm.

{¶ 2} On May 16, 2015, 14-year-old L.F., her boyfriend ("J.M."), and two friends went to a movie and later ended the evening at Taco Bell in Liberty Township.  The group then drove back to L.F.'s subdivision in Monroe at approximately 11:30 PM.  On the way

home, L.F. and J.M. got into an argument and both exited the vehicle several blocks from L.F.'s home. L.F. was walking in the direction of her home, while J.M. followed some distance away. The two friends drove ahead to L.F.'s house, planning to wait for L.F. there.

{¶ 3} As L.F. walked down the street, she observed a white pickup truck with a black stripe pass her. The white truck then passed by her several more times. At one point, the driver of the pickup truck waved at L.F., and she waved back. J.M., who was still some distance away, also observed the white truck pass L.F. several times. The driver of the white truck was proven at trial to be Ronald Clarke.

{¶ 4} L.F. testified that Clarke passed by her one more time, turned around, and then pulled his truck in front for her, blocking her path. At this point, L.F. stated that she was placed in "total fear." With her path blocked, L.F. stated that Clarke exited his vehicle, grabbed her arm, attempted to pull her into the truck, and said "[g]et the fuck in the truck."

{¶ 5} L.F. testified that she was able to pull away from Clarke's grasp and started running toward her house. J.M. testified that he saw the white truck turn on the road near L.F., and then heard L.F. scream and the white truck speed away at a high rate of speed.

{¶ 6} L.F. arrived home crying, screaming, and reported that a man had grabbed her and tried to pull her into his truck. L.F.'s parents called 9-1-1 and L.F. described the perpetrator as an older white male with facial "scruff," whitish-brownish hair, and wearing a sleeveless shirt. J.M. likewise described the perpetrator as wearing glasses, a cut-off shirt, and driving an old "beat up" white truck with a black stripe.

{¶ 7} Monroe Police Officers Mrozek and Leist were patrolling the area and responded to the dispatch. Within minutes, Officer Mrozek observed Clarke driving a truck matching that description traveling westbound on Route 63, just minutes from L.F.'s subdivision. Officer Mrozek initiated a traffic stop and several minutes later L.F. and J.M. were transported to the scene where both confirmed "100 percent" that Clarke was the man

they had seen driving the white truck in the subdivision.

{¶ 8}   While he was detained, Clarke asked why he was being held and stated that he had done nothing wrong.  Clarke was then informed that he matched a description of a suspect in an investigation.  Later, Clarke was advised of his *Miranda* rights and asked whether he would consent to a search of his vehicle.  Clarke refused to grant consent and stated that he wanted an attorney.  As a result, questioning ceased and Clarke was transported to a holding cell.

{¶ 9}   A subsequent search of Clarke's vehicle revealed that Clarke had a rope, a glove, several rolls of duct tape, a six-pack of beer, and several receipts, including one from the same Taco Bell restaurant that L.F. had visited in Liberty Township.  The time stamp on the receipt coincided with the time that L.F. and her friends were at the restaurant.

{¶ 10}   While Clarke was at the police station and going through the booking process, Officer Leist testified that Clarke started talking about the charges and stated that he was driving home from Taco Bell in Liberty Township and was taking an indirect route. Officer Leist testified that he then advised Clarke that he had already been *Mirandized* and informed officers of his desire for an attorney.  Clarke clarified that he only wanted an attorney for the search of his vehicle and agreed to speak with a detective.

{¶ 11}   Detective Myers spoke with Clarke and informed him again that if he wished to speak on the matter he would have to waive his rights to an attorney.  Clarke stated that he wished to talk and confirmed that he had only requested an attorney for the issues related to the search of his vehicle.  Clarke was then advised once more of his *Miranda* rights and signed a written waiver.

{¶ 12}   During his interview with Detective Myers, Clarke gave a number of inconsistent accounts of his whereabouts that evening.  Clarke initially stated that he left his girlfriend's house to go to Taco Bell and was on his way home, but was making a quick

stop to pick up tobacco.  Later, Clarke stated that he had also stopped at Froggy Blues Café prior to going to the Taco Bell and that he had been "cruising" through Monroe for some time alone.  Clarke denied going through a subdivision or seeing any girl. However, after further information came to light during the interview, Clarke finally admitted that "maybe" he had driven through a subdivision.  Clarke later confirmed that he had, in fact, driven through a subdivision. Clarke stated that he omitted this information because he was very tired, had a lot of things on his mind, and was concerned for the health of his father.

{¶ 13}  Prior to trial, Clarke entered into a stipulated polygraph agreement with the state, which provided that the state would drop the charges against Clarke if the results showed that Clarke was being truthful; otherwise, the polygraph test results would be admissible at trial.  Clarke failed the polygraph examination and the state presented the testimony of the certified polygraph examiner and the videotape of Clarke taking the polygraph examination.  The results of the polygraph examination showed that Clarke showed "extreme deception" when he answered "no" to the following three questions: "(1) did you stop and approach that girl, (2) did you grab that girl's arm, and (3) did you tell that girl to get in the fucking truck."

{¶ 14}  Furthermore, during the polygraph examination, Clarke volunteered more inculpatory information.  Contrary to his prior pronouncements, Clarke now claimed that he had specifically driven to L.F.'s subdivision to look at a vehicle that was listed for sale on the internet.  Clarke also admitted for the first time that he had seen L.F. on the night of the incident and that she had waved to him.  Clarke also stated that he might have seen L.F. previously "at a football game or something."

{¶ 15}  For the actions detailed above, Clarke was indicted on one count of attempted abduction, a fourth-degree felony, in violation of R.C. 2923.02 and R.C. 2905.02.  As noted above, Clarke filed a motion to suppress, which the trial court denied.  Following

a jury trial in which the above referenced facts were introduced at trial, the jury found Clarke guilty of attempted abduction. Clarke now appeals, raising six assignments of error for review:

{¶ 16} Assignment of Error No. 1:

{¶ 17} THE TRIAL COURT ERRED IN DENYING MR. CLARKE'S MOTION TO SUPPRESS EVIDENCE.

{¶ 18} In his first assignment of error, Clarke alleges the trial court erred by denying his motion to suppress statements made to Detective Myers because he had invoked his Fifth Amendment right to counsel and the police improperly initiated the interrogation. We disagree.

{¶ 19} Appellate review of a trial court's decision to grant or deny a motion to suppress is a mixed question of law and fact. *State v. Bell*, 12th Dist. Clermont No. CA2008-05-044, 2009-Ohio-2335, ¶ 8. Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility. *State v. Harsh*, 12th Dist. Madison No. CA2013-07-025, 2014-Ohio-251, ¶ 9. Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4764, ¶ 14. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Id*.

{¶ 20} If a suspect in a criminal investigation invokes his right to counsel at any time during a custodial interrogation, the police must cease all questioning until a lawyer has been made available or until the suspect reinitiates the conversation. *State v. O'Leary*, 12th Dist. Butler No. CA2013-01-009, 2013-Ohio-5670, ¶ 23; *State v. Gulley*, 12th Dist. Clermont

- 5 -

No. CA2005-07-066, 2006-Ohio-2023, ¶ 33. To invoke the right to have an attorney present during interrogation, a suspect must unambiguously request counsel such that a reasonable officer in the circumstances could understand the statement to be a request for an attorney. *State v. Voss*, 12th Dist. Warren No. CA2006-11-132, 2008-Ohio-3889, ¶ 66.

{¶ 21} Based on our review, we find the trial court did not err by denying Clarke's motion to suppress. At the suppression hearing, the state presented testimony that Clarke was advised of his *Miranda* rights by Officer Leist. When Clarke was asked for consent to search the vehicle, he invoked his right to counsel and all questioning ceased. However, at the police station, the record reflects that Clarke reinitiated conversation with police and "just started talking" about the charges and his whereabouts that evening. When asked about his invocation of his right to counsel, Clarke clarified that his request was limited to the search of his car and he was not requesting counsel on other aspects of the investigation. The record further includes a signed *Miranda* form advising Clarke of his rights and a recorded interview with Detective Myers where Clarke confirmed his desire to speak with the detective. *See, e.g., O'Leary* at ¶ 23 (statements not suppressed where suspect reinitiates the conversation). Accordingly, we find the record supports the finding that Clarke reinitiated the conversation with police and the trial court did not err in denying his motion to suppress. Clarke's first assignment of error is without merit and overruled.

{¶ 22} Assignment of Error No. 2:

{¶ 23} MR. CLARKE'S CONVICTION MUST BE REVERSED BECAUSE A SEATED JUROR SHOULD HAVE BEEN DISMISSED FOR CAUSE.

{¶ 24} In his second assignment of error, Clarke argues the trial court abused its discretion by failing to sua sponte dismiss a juror who was allegedly biased because he lived in the neighborhood where the crime occurred and expressed some concern about the incident. We find no merit to Clarke's argument.

{¶ 25}   A trial court has broad discretion in determining a juror's ability to be impartial. *State v. Dennis*, 79 Ohio St.3d 421, 427 (1997).  This court has held that Crim.R. 24 gives a trial court the authority to sua sponte dismiss a juror if the trial court determines that the juror is not impartial or is otherwise unsuitable for jury service.  *State v. Midwest Pride IV, Inc.*, 131 Ohio App.3d 1, 19 (12th Dist.1998).  A trial court's decision will be reversed only if the court has abused its discretion.  *State v. Wood*, 12th Dist. Preble No. CA2005-11-018, 2006-Ohio-3781, ¶ 18.

{¶ 26}   In the present case, the juror acknowledged that he lived in the subdivision where the crime occurred, but had only "generally" discussed the incident with his wife. While the juror noted that he was "a little bit shocked at first," he also stated that he "didn't know the details."  Furthermore, the juror was questioned by the prosecutor, defense counsel, and trial judge on his ability to remain impartial.  Throughout the entirety of the voir dire examination, the juror was unequivocal in his ability to remain impartial and assured the parties and the trial court that he would listen to all of the evidence and witnesses.

> THE COURT: Okay. [Juror], the fact that you live in the subdivision and have some preexisting knowledge of the allegations in this case, would that prevent you from being fair and impartial in this case?
>
> JUROR: No. I mean, I - - you know, I heard about an incident. Other than details and stuff, no I do not know.
>
> * * *
> PROSECUTOR: And sir, since I have you I want to talk to you a little bit because I think you raised your hand about you had heard about this case.
>
> JUROR: Yes.
>
> PROSECUTOR: You said you lived in the neighborhood.
>
> JUROR: Yes.
>
> * * *

PROSECUTOR: And I know I asked a very convoluted question, so I'll try to clarify it. Can you agree to set aside whatever your conversation was with your wife about it and basically - -

JUROR: Oh, yeah.

PROSECUTOR: - - look at the evidence inside the case - -

JUROR: It's been a while - -

PROSECUTOR: - - since we had that discussion anyway. It wasn't a long, drawn-out discussion

* * *

DEFENSE ATTORNEY: Do you feel like that you can put - - I suspect you've got deep feelings for your neighborhood.

JUROR: Yeah.

DEFENSE ATTORNEY: Can you put those aside and listen to all the evidence and make your decision?

JUROR: Yeah, I do believe I can do it.

DEFENSE ATTORNEY: Well - -

JUROR: I mean, I had teenage daughters at one time and I know everything that was said to dad wasn't always the truth. You know, they're grown and they've moved out on their own, but yeah, I do believe I could be willing to listen to all the evidence and the witnesses and be able to - - right now, I don't have a clear picture, but I have to hear what that clear picture is.

{¶ 27} Moreover, we also note that Clarke did not object to the juror and has thus waived all except plain error. *Wood* at ¶ 17. In this case, the trial court did not commit any error, plain or otherwise, by declining to sua sponte dismiss the juror. In fact, the record reveals that defense counsel may have seen the juror as a favorable juror, as he acknowledged that "I had teenage daughters at one time and I know everything that was said to dad wasn't always the truth." In sum, nothing from the record suggests that the juror was partial or prejudged the case. Accordingly, we find Clarke's second assignment of error

- 8 -

to be without merit and it is hereby overruled.

{¶ 28}  Assignment of Error No. 3:

{¶ 29}  THE TRIAL COURT ERRED BY ALLOWING THE VIDEO OF MR. CLARKE'S POLYGRAPH EXAMINATION TO BE PLAYED FOR THE JURY OVER OBJECTION FROM THE DEFENSE.

{¶ 30}  In his third assignment of error, Clarke contends the trial court erred by permitting the jury to view a videotaped interview of his polygraph examination because he was wearing jail clothing and leg restraints during the examination.  Clarke argues that the video was highly prejudicial and in violation of the United States Supreme Court ruling in *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691 (1976).

{¶ 31}  In order to ensure a fair trial, a defendant cannot be compelled to appear in restraints or jail clothing during the guilt or penalty phase of trial unless the trial court determines that the defendant presents a risk of escape, violence, or disruption of the trial. *Deck v. Missouri*, 544 U.S. 622, 624, 125 S.Ct. 2007 (2005); *Estelle* at 504.  These precautions are designed to avoid the risk of diluting the presumption of innocence, to avoid hindering the accused's ability to communicate with his lawyer, and to maintain the formal dignity of the judicial process, a component of which is respectful treatment of the accused. *Deck* at 630. *State v. Craycraft*, 12th Dist. Clermont Nos. CA2009-02-013 and CA2009-02-014, 2010-Ohio-596, ¶ 60.

{¶ 32}  As this court has previously noted, *Deck* and its predecessors involved the use of jail clothing and visible shackles during courtroom proceedings.  *Craycraft* at ¶ 61. As in *Craycraft*, the record here is that Clarke was not compelled to appear before the jury in jail clothing or shackles.  Under such circumstances, the concerns with having a criminal defendant appear in jail clothing or restraints in a courtroom proceeding are not directly applicable.  Although this court in *Craycraft* acknowledged that appearing in jail clothing and

shackles could risk the presumption of innocence, that concern must be considered in light of the specific facts and circumstances. *Id.* at ¶ 61. Here, we find based on a consideration of the facts and circumstances that any such risk was tempered by other factors.

{¶ 33} First, the videotape of the polygraph examination had a very high probative value. During the examination, Clarke provided an account that contradicted his earlier statements made to police. This time Clarke stated that he specifically went to L.F.'s subdivision to look at a used car for sale. As previously noted, Clarke initially stated that he was taking an indirect route from the restaurant to Route 63. Later, Clarke admitted that he was in the subdivision, but was "just cruising" and did not drive by the victim. It was also during this polygraph examination that Clarke first stated that L.F. had waved at him on the night of the incident. Clarke also admitted in that interview that he had previously seen the victim at a football game, which supported the state's theory that Clarke had targeted this victim after leaving the Taco Bell in Liberty Township.

{¶ 34} Furthermore, we observe that the trial court, cognizant of the potential prejudicial effect may have on the jury, gave a limiting instruction prior to playing the tape. *State v. Cline*, 11th Dist. Trumbull No. 2007-T-0052, 2008-Ohio-1500, ¶ 39. The court informed the jury that Clarke would be dressed in jail clothing in the interview, and instructed the jury not to give any consideration to that fact during deliberations or in reaching its verdict. Absent any indication to the contrary, the jury is presumed to have followed the court's instructions. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 54.

{¶ 35} Despite our decision in the present matter, as this court did in *Craycraft*, we again caution trial courts to take every precaution to avoid the display of defendants, who stand presumptively innocent, in jail clothing or restraints which reflect their custodial status at trial. Nevertheless, considering the facts and circumstances of the present case, we find the trial court did not err by permitting the videotape of Clarke's polygraph examination.

- 10 -

Accordingly, Clarke's third assignment of error is without merit and hereby overruled.

{¶ 36} Assignment of Error No. 4:

{¶ 37} THE PROSECUTOR VIOLATED MR. CLARKE'S CONSTITUTIONAL RIGHTS BY FAILING TO PROVIDE HIM WITH EXCULPATORY MATERIAL IN A TIMELY MANNER AS REQUIRED BY *BRADY V. MARYLAND* AND ITS PROGENY AND BY MAKING IMPROPER COMMENTS BEFORE THE JURY.

{¶ 38} In his fourth assignment of error, Clarke raises two separate issues related to prosecutorial misconduct. First, Clarke claims the prosecutor failed to provide him with exculpatory material in a timely manner. Next, Clarke alleges the prosecutor made improper comments during the questioning of several witnesses and during closing argument to the jury.

### *Brady* Claim

{¶ 39} First, Clarke argues the trial court erred by denying him access to material evidence that was allegedly withheld by the state contrary to the United States Supreme Court's holding in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963). In *Brady*, the United States Supreme Court held "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87.

{¶ 40} However, a *Brady* violation occurs only where suppressed exculpatory evidence is discovered after trial. *State v. Fornash*, 12th Dist. Butler No. CA2003-04-082, 2004-Ohio-707, ¶ 20. Where exculpatory evidence is revealed prior to trial, the state has timely disclosed the evidence and there is no violation that would require a reversal or mistrial. *Id.* Even if the evidence is disclosed during the trial, there is no *Brady* violation. *State v. Payne*, 10th Dist. Franklin No. 09AP-107, 2010-Ohio-1018, ¶ 31.

{¶ 41} In the present case, Clarke contends that *Brady* material contained in grand jury testimony was not timely disclosed as he was prevented from effectively using that material at trial. However, the record does not support Clarke's assertion, as Clarke's attorney was provided with the relevant grand jury testimony several days prior to the start of the trial. Additionally, the testimonies from the grand jury were not exculpatory. Clarke is unable to successfully claim the state deprived him of *Brady* information in this matter.

**Prosecutorial Misconduct**

{¶ 42} Next, Clarke raises several issues related to prosecutorial misconduct and an allegation that the state made "testimonial assertions" during the victim's direct examination. We initially note that Clarke never objected to any of these issues during trial and thus he has waived all except plain error. *State v. Cotton*, 12th Dist. Butler No. CA2003-06-159, 2004-Ohio-4409, ¶ 19. Under a plain error analysis, a reviewing court will not reverse a conviction based on a trial court's instruction "unless, but for the error, the outcome of the trial clearly would have been otherwise." *State v. Dougherty*, 12th Dist. Preble No. CA2013-12-014, 2014-Ohio-4760, ¶ 53.

{¶ 43} With respect to the questioning of witnesses, Clarke claims the prosecutor acted inappropriately by asking the victim (1) whether she had "any doubt" that the man she identified to police on the night of the crime was "the person who had tried to abduct you," and (2) whether a state's exhibit was an accurate depiction of the perpetrator "when he tried to abduct you." However, after review we find no error, much less plain error, in these questions. The questions posed by the prosecutor were not testimonial in nature or otherwise improper. *See State v. Dougherty*, 12th Dist. Butler Nos. CA2010-02-036 and CA2010-02-037, 2011-Ohio-788, ¶ 90-94. The questions were based on evidence that Clarke was attempting to abduct the victim by blocking her path and pulling her into his vehicle. A review of the record fails to reveal any misconduct in the questioning of any

witness.

{¶ 44} Regarding statements made by the prosecutor during closing arguments, we find no merit to Clarke's arguments. The state is entitled to a certain degree of latitude in making its concluding remarks. *State v. Layne*, 12th Dist. Clermont No. CA2009-07-043, 2010-Ohio-2308, ¶ 58. A court will find prosecutorial misconduct only when the remarks made during closing were improper and those improper remarks prejudicially affected substantial rights of the defendant. *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, ¶ 62.

{¶ 45} Here, Clarke complains about statements made to the jury explaining why DNA might not have been present, and that the prosecutor falsely claimed Clarke had tape concealed under his jacket. However, these arguments were proper and also based on evidence in the record. First, the record reflects that Clarke did, in fact, have tape concealed under a jacket in his vehicle. Next, the prosecutor was permitted to comment on why Clarke's DNA might not have been on the victim's arm, as it was an issue raised during the trial. Simply stated, the state was allowed to present an accurate case detailing the evidence and rebut assertions that Clarke would likely make in his defense, which it did. Accordingly, Clarke's fourth assignment of error is without merit and overruled.

{¶ 46} Assignment of Error No. 5:

{¶ 47} MR. CLARKE WAS DEPRIVED A FAIR TRIAL AS THE RESULT OF HIS COUNSEL'S DEFICIENT PERFORMANCE.

{¶ 48} In his fifth assignment of error, Clarke alleges that he was deprived of effective assistance of counsel. In so doing, Clarke raises a number of perceived instances of ineffectiveness. We find Clarke's arguments to be without merit.

{¶ 49} To prevail on an ineffective assistance of counsel claim, an appellant must establish: (1) that his trial counsel's performance was deficient; and (2) that such deficiency

prejudiced the defense to the point of depriving the appellant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984); *State v. Vore*, 12th Dist. Warren Nos. CA2012-06-049 and CA2012-10-106, 2013-Ohio-1490, ¶ 14. Trial counsel's performance will not be deemed deficient unless it "fell below an objective standard of reasonableness." *Strickland* at 688. To show prejudice, the appellant must prove there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. An appellant's failure to satisfy one prong of the Strickland test negates a court's need to consider the other. *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000).

### Speedy Trial

{¶ 50} Clarke first raises a number of speculative issues regarding his right to a speedy trial, but yet he concedes that his speedy trial rights were not violated. Instead, Clarke argues that perhaps he would have chosen to forgo the suppression hearing had he been better aware of his constitutional and statutory rights.

{¶ 51} However, we decline to indulge in Clarke's speculative arguments. The filing of the motion to suppress was a reasonable trial strategy especially considering that Clarke had supplied conflicting, and incriminating statements to the police and had initially requested an attorney. In addition, beyond Clarke's speculative arguments, he has not otherwise shown how the outcome of the proceeding would have been different.

### Stipulated Polygraph

{¶ 52} Next, Clarke also argues his trial counsel should not have stipulated to the admissibility of the polygraph examination. In this case, Clarke consented to a polygraph examination prior to trial in accordance with *State v. Souel*, 53 Ohio St.2d 123 (1978). That polygraph examination was permitted to be shown to the jury based on an agreement that Clarke signed with the state. On appeal, Clarke alleges that he was under duress at the

- 14 -

time of the polygraph examination and his trial counsel forced him to take the polygraph.

{¶ 53} We find Clarke's argument to be without merit. As this court has previously acknowledged, "'[w]hen a defendant agrees to undergo a polygraph test, presumably he knows whether he is telling the truth and is willing to assume the risk of error. It is completely within his knowledge and control whether to make the decision.'" *State v. Worthington*, 12th Dist. Brown No. CA2014-12-022, 2015-Ohio-3173, ¶ 19, quoting *State v. Lascola*, 61 Ohio App.3d 228, 234 (10th Dist.1988).

{¶ 54} Here, Clarke agreed to take the polygraph examination after being fully advised of his constitutional and statutory rights. Clarke made the informed choice to sign the agreement with the state consenting to the polygraph examination. While Clarke alleges that he was pressured to take the polygraph examination, the record belies those assertions. Clarke affirmatively indicated that he was proceeding on his own free will prior to the initiation of the polygraph examination. *See State v. Scott*, 9th Dist. Lorain No. Civ.A. 04CA008503, 2004-Ohio-6746, ¶ 10; *State v. Fisk*, 10th Dist. Franklin No. 01AP-1193, 2002-Ohio-2776, ¶ 74-75. In the video of the polygraph examination, Clarke appears calm, relaxed, and confident in his decision to take the examination. Clarke has not demonstrated that trial counsel provided deficient representation with respect to the polygraph examination.

**Counsel Only Material**

{¶ 55} Clarke next argues that his trial counsel was ineffective for failing to request a continuance to review "counsel only" material that was allegedly presented on the day of trial and that trial counsel should have made an effort to challenge the designation of such evidence so that he could personally review the material. However, Clarke fails to address how this amounted to ineffective assistance of counsel or would have had an effect on the outcome of the trial, and is therefore without merit. Furthermore, as addressed in Clarke's

fourth assignment of error, the grand jury testimony was provided to his trial counsel prior to trial and the record reflects that his counsel stated on the record that he had reviewed those materials. There is no evidence to suggest that Clarke's trial counsel was in need of a continuance to review those limited materials.

**Impeachment of Witnesses**

{¶ 56} Next, Clarke argues that his trial counsel was ineffective for failing to raise several inconsistencies that he claims would have undermined the credibility of the witnesses. Specifically, Clarke asserts there was inconsistency in: (1) the reasons why Clarke let go of the victim's arm and fled the scene, (2) whether Clarke opened *both* his truck doors, (3) whether the victim saw Clarke's dog in the truck, and (4) whether police officers informed Clarke of the reasons for being pulled over.

{¶ 57} "The scope of cross-examination falls within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel." *State v. Chamberlain*, 12th Dist. Brown No. CA2013-04-004, 2014-Ohio-4619, ¶ 44.

{¶ 58} Clarke's arguments on appeal are not supported in fact, as a simple review of the record shows that his trial counsel did cross-examine witnesses on many of the perceived inconsistencies in evidence. Furthermore, many of the specific inconsistencies cited in Clarke's brief amount to minor details, which clearly falls within the ambit of trial strategy. To belabor every minor inconsistency would not have impacted the result of the trial, especially in light of the very strong evidence that the state presented to the jury. *See State v. Ford*, 12th Dist. Butler No. CA2009-01-039, 2009-Ohio-6046, ¶ 18. Our review of the record reveals that Clarke's trial counsel fully investigated this case, raised effective impeachment evidence on cross-examination, and zealously represented Clarke in this matter.

**Juror Challenge**

**{¶ 59}** Clarke also alleges that trial counsel was ineffective for failing to challenge "for cause" the juror who lived in the neighborhood where the offense occurred. "Where 'jurors demonstrate during voir dire that they are able to remain fair and impartial, no action will lie for ineffective assistance of counsel for not seeking their removal.'" *State v. Burns*, 12th Dist. Clinton No. CA2013-10-019, 2014-Ohio-4625, ¶ 12, quoting *State v. Bofia*, 3d Dist. Henry No. 07-03-12, 2004-Ohio-3018, ¶ 14. As previously discussed, the juror assured counsel several times that although he lived in the neighborhood, he could remain impartial. There was no reasonable basis for a "cause" challenge. Accordingly, we find Clarke's trial counsel was not ineffective for failing to challenge the relevant juror.

### Fifth Amendment Claim

**{¶ 60}** Next, Clarke argues that his trial counsel was ineffective for allegedly commenting on his failure to testify at trial. Clarke's argument is premised on the following:

> [TRIAL COUNSEL]: Your Honor, we will rest at this time. Based on my advice, my client is not going to take the witness stand.

Despite Clarke's argument to the contrary, his trial counsel's statement was not improper, did not violate his constitutional rights, nor did it amount to ineffective assistance of counsel. The statement made by trial counsel was routine procedure. Moreover, the trial court provided limiting instructions stating that the failure to testify in his own defense may not be considered for any purpose and we may presume the jury followed the trial court's instruction. *Hancock*, 2006-Ohio-160 at ¶ 54. Clarke fails to show how this amounts to ineffective assistance of counsel.

### Failure to Object

**{¶ 61}** Finally, Clarke argues that his trial counsel was ineffective for failing to object to the "prosecutor's improper comments" and the victim's testimony when she stated that

Clarke had "tried to abduct [her]."[1]  However, even if we had found the victim's statement to be objectionable, which we do not, we cannot say that trial counsel's failure to object was anything more than trial strategy.  *Chamberlain*, 2014-Ohio-4619 at ¶ 48.  Clarke's trial counsel may have believed that an objection would have unduly focused the jury's attention on the information, or was not worth the risk of antagonizing the jury.

**Conclusion**

{¶ 62}  Based on our review of the entire record, we find that Clarke's trial counsel was not ineffective.  The record plainly indicates that trial counsel did fully investigate this case and zealously represent Clarke in this matter.  Clarke was not convicted based on ineffective assistance of counsel, but instead his conviction was based on the overwhelming evidence presented at trial.  Accordingly, Clarke's fifth assignment of error is overruled.

{¶ 63}  Assignment of Error No. 6:

{¶ 64}  THE CUMULATIVE EFFECT OF THE ABOVE ERRORS WAS SUCH THAT MR. CLARKE WAS DEPRIVED OF A FAIR TRIAL.

{¶ 65}  In his sixth assignment of error, Clarke argues that he received an unfair trial based on the number of alleged errors during the course of the proceeding and therefore he is entitled to a new trial.  We find Clarke's argument to be meritless.

{¶ 66}  According to the cumulative error doctrine, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal."  *State v. McClurkin*, 12th Dist. Butler No. CA2007-03-071, 2010-Ohio-1938, ¶ 105, citing *State v. Garner*, 74 Ohio St.3d 49, 64 (1995).

---

1. While Clarke does not specifically raise which comments by the prosecutor were improper in this argument, we presume that he refers to the same issues he raised in his third assignment of error, which we found were without merit.

However, because we have found that no errors occurred during Clarke's trial, we find that he was not deprived of a fair trial, and the cumulative error doctrine is inapplicable. Clarke's sixth assignment of error is overruled.

{¶ 67} Judgment affirmed.

M. POWELL, P.J., and PIPER, J., concur.