[Cite as *State v. Harris*, 2018-Ohio-3222.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2017-11-161 |
| | : | O P I N I O N |
| - vs - | | 8/13/2018 |
| | : | |
| ZACHARY HARRIS, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2016-08-1111

Michael T. Gmoser, Butler County Prosecuting Attorney, Willa Concannon, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Maxwell D. Kinman, 423 Reading Road, Mason, Ohio 45040, for defendant-appellant

**PIPER, J.**

{¶ 1} Defendant-appellant, Zachary Harris, appeals his convictions in the Butler County Court of Common Pleas after pleading guilty to two counts of aggravated murder.

{¶ 2} Harris was part of a three-person team that killed Orlando Gilbert and Todd Berus. The three individuals were hired to retaliate against Gilbert for a shooting that took place several days earlier. On the day of the incident, Harris and his accomplices pulled alongside Gilbert's vehicle and opened fire into the car with an AK-47, killing Gilbert and

Berus. Police soon identified the vehicle Harris was in after it left the murder scene, and a chase then ensued. Harris was captured and arrested after the chase ended.

{¶ 3} Harris was indicted on two counts of aggravated murder with death penalty specifications and possessing a weapon under disability. Harris was appointed two defense attorneys who filed a plethora of motions in Harris' defense. These motions included two motions to suppress evidence, a motion to exclude the death penalty claiming that Harris lacked mental capacity, and a motion to continue the trial. After hearings on the motions, the trial court denied each.

{¶ 4} On the day trial was to commence, Harris pled guilty to both counts of aggravated murder. In return, the state agreed to dismiss the death penalty specifications and the having weapons under disability charge. The parties agreed to a sentence of life imprisonment without the possibility of parole, which the trial court accepted. Harris now appeals his convictions, raising the following assignments of error.

{¶ 5} Assignment of Error No. 1:

{¶ 6} THE TRIAL COURT FAILED TO ENSURE THAT THE APPELLANT KNOWINGLY ENTERED A GUILTY PLEA IN THIS MATTER.

{¶ 7} Harris argues in his first assignment of error that his guilty plea was invalid and should not have been accepted by the trial court.

{¶ 8} When a defendant enters a guilty plea in a criminal case, the plea must be knowingly, intelligently, and voluntarily made. *State v. Mosley*, 12th Dist. Warren No. CA2014-12-142, 2015-Ohio-3108, ¶ 6. "Failure on any of these points 'renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution.'" *State v. McQueeney*, 148 Ohio App.3d 606, 2002-Ohio-3731, ¶ 21 (12th Dist.), quoting *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). To ensure that a defendant's guilty plea is knowingly, intelligently, and voluntarily made, the trial court must engage the

- 2 -

defendant in a plea colloquy pursuant to Crim.R. 11(C). *State v. Henson*, 12th Dist. Butler No. CA2013-12-221, 2014-Ohio-3994, ¶ 10.

{¶ 9} A guilty plea is invalid if the trial court does not strictly comply with Crim.R. 11(C)(2)(c), which requires the trial court to verify that the defendant understands the constitutional rights he is waiving. *State v. Shavers*, 12th Dist. Butler No. CA2014-05-119, 2015-Ohio-1485, ¶ 9. Conversely, the trial court need only substantially comply with the nonconstitutional notifications required by Crim.R. 11(C)(2)(a) and (b). *Id.* Under the substantial compliance standard, the appellate court must review the totality of the circumstances surrounding the defendant's plea and determine whether the defendant subjectively understood the effects of his plea. *State v. Givens*, 12th Dist. Butler No. CA2014-02-047, 2015-Ohio-361, ¶ 12. When a court complies with Crim.R. 11(C)(2), there is a presumption that the plea entered by a defendant was voluntary. *State v. Kennell*, 12th Dist. Clermont No. CA2015-01-002, 2015-Ohio-4817, ¶ 29.

{¶ 10} Harris now claims that his plea was not voluntarily made because he wanted a continuance of the jury trial, he had diminished capacity, and he felt he had no other choice but to accept the plea. However, Harris does not raise any argument that the trial court did not strictly or substantially comply with Crim.R. 11(C), and a review of the record indicates that the trial court complied with the rule's requirements. Thus, there is a presumption that Harris' plea was voluntary.

{¶ 11} After reviewing the record, we find that Harris' claims do not rebut the presumption that his plea was voluntarily made. The facts are undisputed that Harris faced two aggravated murder charges, each with death penalty specifications, as well as having a weapon under disability charge. Although the motions Harris filed were denied, the trial court specifically addressed the consequences of Harris' plea with him before accepting the plea as voluntarily given. Moreover, the trial court recognized Harris' displeasure regarding the

denial of his motions and reiterated the voluntariness of Harris' plea. "I understand that you disagree with my decisions and all that's on the record, whatever. All that into consideration, do you still want to plead guilty today?" Harris then affirmed his choice to plead guilty.

{¶ 12} The trial court also discussed the benefits of pleading guilty and addressed Harris that both counts of murder exposed him to the possibility of a death sentence after a jury or bench trial, while the plea made capital punishment impossible. "As a result of this plea, [a death sentence] is not a possibility. Those specifications are being dismissed. A jury, nor myself, [cannot] sentence you to death as a result of this case." Thus, Harris had motivation to accept the plea, and accepting the plea was advantageous to Harris considering the agreed sentence and dismissal of two death penalty specifications and a third charge.

{¶ 13} Harris expressly confirmed that he understood the terms of the agreement, that he was not under the influence of drugs or medication, and that he had read and understood the written plea form. Harris also confirmed that his attorneys discussed the plea with him fully and had answered all his questions. Harris recognized that the plea was "in [his] best interest" and asserted that he had no other questions for his attorneys or the court about the plea. Harris' defense attorneys assured the court that they believed in the voluntary nature of Harris' plea and that the plea was a "just resolution" to the case. Harris himself told the court that his plea was voluntarily made, which is patently reasonable considering that Harris would avoid the death penalty with his plea despite the overwhelming evidence the state was prepared to present to establish Harris' guilt.

{¶ 14} The record does contain some hesitancy from Harris regarding his decision to plead guilty. When Harris was asked during the plea hearing whether he admitted the facts from the bill of particulars, Harris responded, "I'm really not, but * * *." The court then stated, "I cannot take a plea when you state, well I really don't, but yes, I do." The trial court then

offered time for Harris to confer with this attorneys and assured Harris that the trial court would be "as patient and accommodating as possible. I'm not trying to rush anybody into any kind of a plea." Harris then conferred with his defense team and announced his desire to continue with the plea, including fully admitting to the facts in the bill of particulars. The trial court asked Harris if he was entering the plea of his own free will, to which Harris replied "yes, sir."

{¶ 15} While Harris was dissatisfied that his motions were denied and may have believed that his counsel were unprepared to move on with the trial, the record is clear that Harris fully understood the rights he was waiving, as well as the consequences of his plea. Moreover, Harris has not asserted his innocence, nor raised any basis on which he would have chosen a jury trial over the guilty plea.

{¶ 16} Harris was faced with an unpleasant alternative, either agree to life in prison without the possibility of parole or proceed to trial where he could be subject to two death sentences. That fact, however, did not render Harris' plea involuntary and Harris' sentiment that he had to accept the plea was a mere acknowledgement that he was choosing to avoid the death penalty even if the resulting sentence was life without parole.

{¶ 17} Specific to Harris' suggestion that he has diminished capacity and therefor could not enter a voluntary plea, the record clearly demonstrates otherwise. The trial court held a full hearing to address Harris' claim that he was intellectually disabled and Harris' motion to remove the death penalty specifications because he had diminished capacity. The trial court found that Harris was not intellectually disabled and did not have diminished capacity after hearing extensive evidence on the issue and after fully considering Harris' motion. The trial court considered that Harris' IQ was above the threshold range for intellectual disability, and also that Harris demonstrated "logical tactics" and "strategy and sophistication" throughout the proceedings. Nothing occurred on record to alter the trial

court's determination and the record clearly shows that Harris knew and understood the effects of his plea.

{¶ 18}  After a full review of the record, we find that Harris' guilty plea was knowingly, voluntarily, and intelligently made.  As such, Harris' first assignment of error is overruled.

{¶ 19}  Assignment of Error No. 2:

{¶ 20}  THE TRIAL COURT ERRED BY FAILING TO GRANT A CONTINUANCE OF THE TRIAL IN THIS MATTER.

{¶ 21}  Harris argues in his second assignment of error that the trial court erred by not granting him a continuance.

{¶ 22}  It is well-established that a trial court has broad discretion in determining whether to grant or deny a continuance.  *State v. Robinson*, 12th Dist. Butler No. CA2015-01-013, 2015-Ohio-4533, ¶ 19.  This court will not reverse the trial court's decision denying a defendant's motion for a continuance absent an abuse of discretion.  *State v. Glowka*, 12th Dist. Butler No. CA2012-10-203, 2013-Ohio-3080, ¶ 8.  An abuse of discretion "connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."  *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 181.

{¶ 23}  While there is no bright-line test for determining whether a continuance should be granted, the trial court should be guided by consideration of several factors, "including the length of the requested delay, whether other continuances have been requested and received, the inconveniences likely to result, the reasons for the delay, and whether the defendant contributed to the circumstances giving rise to the need for delay."  *State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, ¶ 18.[1]

---

1. The state argues that this court should not address the merits of Harris' assignment of error because Harris waived the argument by pleading guilty.  With the exception of the constitutionality of the plea itself, a defendant who enters a guilty plea waives the right to appeal all nonjurisdictional issues arising during prior stages of the proceedings.  *State v. Moxley*, 12th Dist. Madison No. CA2011-06-010, 2012-Ohio-2572.  In other words, a guilty plea waives any and all constitutional infirmities that occurred prior to the plea.  *Id*.  Therefore, the state is correct

{¶ 24} Seven weeks before the trial was to start, and before he pled guilty, Harris moved for a continuance citing the yet-to-be-decided issue of whether he would be subject to the death penalty. However, the trial court soon thereafter ruled on the motion, finding that Harris was eligible to face the death penalty specification. The trial court also denied Harris' request for a continuance. At that point, Harris' counsel were ready to move forward with trial, knowing all pertinent issues in the case and having performed hundreds of hours of work on the case.

{¶ 25} While the competency issue was undoubtedly time consuming and an important component of counsel's pre-trial work, nothing in the record indicates that Harris' defense team was not ready to move forward to the trial phase. The trial court found that having to address Harris' mental eligibility for the death penalty would benefit Harris' defense team, as the issues addressed within that motion and argument were "strongly correlated" to issues raised at the trial and possible mitigation phases. We agree.

{¶ 26} Moreover, the trial court did not abuse its discretion in denying the continuance where the trial date had been set for approximately a year, the witnesses were prepared to attend trial, and both parties were able and prepared to move forward. Harris' second assignment of error is, therefore, overruled.

{¶ 27} Assignment of Error No. 3:

{¶ 28} COUNSEL PROVIDED TO THE APPELLANT WERE INEFFECTIVE.

{¶ 29} Harris argues in his third assignment of error that he was denied his right to effective assistance of counsel.

{¶ 30} To prevail on an ineffective assistance of counsel claim, an appellant must

---

that Harris' guilty plea waived any previous errors by the trial court *unless* the denial of the motion for a continuance of the trial date effectively coerced Harris' plea by making it other than voluntary. While Harris does not address the voluntariness of his plea in his second assignment of error, he did claim in his first that his plea was not voluntarily made because the trial court denied his motion for a continuance. Therefore, we will address the merits of Harris' argument.

show his trial counsel's performance was deficient, and that he was prejudiced as a result. *State v. Clarke*, 12th Dist. Butler No. CA2015-11-189, 2016-Ohio-7187, ¶ 49; *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984). Trial counsel's performance will not be deemed deficient unless it fell below an objective standard of reasonableness. *Strickland* at 688. To show prejudice, appellant must establish that, but for his trial counsel's errors, there is a reasonable probability that the result of his trial would have been different. *Id.* at 694.

{¶ 31} The failure to satisfy either prong of the *Strickland* test is fatal to an ineffective assistance of counsel claim. *Clarke* at ¶ 49. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *State v. Burns*, 12th Dist. Clinton No. CA2013-10-019, 2014-Ohio-4625, ¶ 7. When applied in the context of a guilty plea, a defendant must also demonstrate that there is a reasonable probability that, but for his counsel's errors, he would not have pled guilty and would have insisted on going to trial. *State v. Moxley*, 12th Dist. Madison No. CA2011-06-010, 2012-Ohio-2572.

{¶ 32} Harris claims that his counsel was ineffective for two reasons, (1) not requesting a no contest plea so that he could pursue more arguments on appeal, and (2) for not being more prepared for trial.

{¶ 33} Regarding the guilty plea itself, Harris does not allege that he would have insisted on going to trial, but instead argues that he would have pled no contest and appealed the trial court's ruling on several issues including his motions to suppress and to not face the death penalty because of mental incompetence. However, there is nothing in the record that indicates that the state offered the possibility of a different plea, and Harris does not argue in his brief that he was ever given the choice of a no contest plea.

{¶ 34} Harris' guilty plea was the result of an agreement wherein one criminal charge

and two death penalty specifications were dismissed. The parties both agreed to a sentence wherein Harris would not be subject to the death penalty on either aggravated murder charge, but instead, would receive a life sentence. There is no indication in the record that the state offered or would have afforded Harris the opportunity to plead no contest or to any plea wherein he did not fully admit his guilt in the murders.

{¶ 35} We also observe that Harris asks this court to make assumptions not supported by the record and that are purely theoretical. For example, in support of his arguments, Harris suggests that "there is nothing in the record to indicate that a no contest plea would not have been accepted by the trial court." However, and just as easily, there is nothing in the record to indicate that a no contest plea would have been agreed upon by the state or accepted by the trial court. Raising allegations of ineffectiveness based on suggestions or facts not appearing in the record is an improper method of demonstrating ineffective assistance of counsel.

{¶ 36} Harris next claims that his trial counsel was ineffective for not being more prepared for trial. However, the record does not demonstrate that counsel was not prepared for trial, regardless of the amount of time they spent arguing the mental incompetence issue. The facts indicate that counsel requested a continuance seven weeks before trial, but did not renew the request once the trial court denied a continuance, nor did the attorneys claim they were not prepared for trial.

{¶ 37} Harris' attorneys continually filed motions and every indication on record demonstrates that counsel continually prepared for a trial. For example, counsel focused on jury selection and filed motions indicating that they were pursuing every possible means for selecting a jury favorable to the defense. The trial court noted that Harris' attorneys were effective, had zealously defended Harris, and offered "very well argued" motions in support of

Harris.[2]

**{¶ 38}** Moreover, there is nothing in the record that demonstrates that Harris would not have pled guilty if his counsel prepared for trial in any different manner. Harris rationally choose to accept a plea deal wherein the death penalty specifications were dismissed, especially given the overwhelming evidence the state was prepared to present regarding Harris' guilt. Harris has simply failed to demonstrate that he would not have accepted a plea agreement in lieu of trial.

**{¶ 39}** Having found that Harris was not denied his right to effective assistance of counsel, his final assignment of error is overruled.

**{¶ 40}** Judgment affirmed.


S. POWELL, P.J., and M. POWELL, J., concur.

---

2. At one point during the proceedings, the trial court made reference to the 61 motions defense counsel had already filed.