[Cite as *State v. Spain*, 2025-Ohio-1121.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-11-123 |
| | : | O P I N I O N |
| - vs - | | 3/31/2025 |
| | : | |
| JORDAN SPAIN, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2023-02-0165

Michael T. Gmoser, Butler County Prosecuting Attorney, and John Heinkel, Assistant Prosecuting Attorney, for appellee.

Repper-Pagan Law, Ltd., and Christopher Pagan, for appellant.

**BYRNE, P.J.**

{¶ 1}  Jordan Spain appeals from his sentence imposed by the Butler County Court of Common Pleas for involuntary manslaughter. For the reasons described below, we affirm.

## I. Factual and Procedural Background

{¶ 2}   In September 2022, Sergeant Brandon McCroskey of the Fairfield Township Police Department filed complaints in the Butler County Court of Common Pleas, Juvenile Division, alleging that Spain was a delinquent child for having committed acts that if committed by an adult would have constituted the offenses of murder and felonious assault.

{¶ 3}   The juvenile complaint arose from allegations that on July 23, 2018, Spain shot and killed the victim—a 16-year-old female—during a drug deal.[1] On that day, the victim and three other individuals ("the victim's group") drove to an address in Fairfield Township, Butler County, Ohio to transact a drug deal with Spain, Spain's brother Paris, and Paris' "buddy," Markeylnd Townsend ("Spain's group"). Both groups intended to rob or deceive the other. During the transaction, guns were drawn. While the victim's group was fleeing in their vehicle, Spain and Townsend opened fire. A bullet fired by Spain struck the victim and killed her.

{¶ 4}   After the filing of the complaint, the juvenile court held probable cause and amenability hearings. The juvenile court found probable cause that Spain committed the acts alleged and that Spain was not amenable to care or rehabilitation within the juvenile system. The court bound the case over to the Butler County Court of Common Pleas, General Division—that is, adult court—for further proceedings.

{¶ 5}   In March 2023, a Butler County grand jury indicted Spain on three counts: (1) murder, (2) felonious assault (serious physical harm), and (3) felonious assault (deadly weapon). All three counts contained firearm specifications pursuant to R.C. 2941.145. The trial court arraigned Spain and he pleaded not guilty.

---

1. The approximate four-year delay in prosecuting the case against Spain was due, in large part, to a lack of cooperation with the police by various individuals involved in the drug deal.

{¶ 6} Spain and the state later negotiated a plea agreement. In return for Spain's guilty plea, the state agreed to amend the murder charge to involuntary manslaughter, in violation of R.C. 2903.04(A), a first-degree felony, with a firearm specification in violation of R.C. 2941.145. The state further agreed that the felonious assault counts and firearm specifications would merge or be dismissed.

{¶ 7} In September 2023, Spain appeared before the court, withdrew his former not guilty plea, and entered a guilty plea to involuntary manslaughter and the gun specification. The court then engaged Spain in a plea colloquy. After informing Spain of the maximum penalties and determining that Spain was entering his plea intelligently, voluntarily, and knowingly, the court accepted Spain's plea and found him guilty.

{¶ 8} The court ordered a presentence-investigative report ("PSI") prior to sentencing Spain in November 2023. The PSI contained a lengthy recitation of the investigation that led to Spain being charged, Spain's complete juvenile and adult criminal record, and a victim impact statement written by the victim's mother. The PSI also contained Spain's version of events, which, as described by the probation officer was limited to, "He was trying to buy some weed, 'they' pulled out a gun and he shot."

{¶ 9} Spain filed a sentencing memorandum. In it, Spain significantly expanded on his version of events. He asserted that on July 23, 2018, he was 14 years old and was "hanging out" with his big brother, Paris, and Paris' "buddy," Townsend. Paris and Townsend were both adults, age 19. They decided to purchase marijuana and used Snapchat to "order up" marijuana from a drug dealer. However, their plan was to pay the drug dealer with counterfeit currency. Townsend was armed with a 9 mm pistol and had the counterfeit currency. According to Spain, as they walked out of the apartment to meet with the drug dealer, "the adults" handed Spain a .45 caliber Glock handgun.

{¶ 10} Spain stated that the victim and her three companions also had nefarious

- 3 -

intentions with respect to the drug deal. One member of the victim's group only had 20 grams of marijuana but had packaged it in such a way as to fool Spain's group into thinking it was an ounce of marijuana. However, according to Spain, the victim's group never intended to complete the transaction; they intended to rob Spain's group of the drug money.

{¶ 11} When the parties arrived on scene, the meeting became contentious, and the discussion turned to who would first produce the money and/or drugs. When Townsend extended his hand with the counterfeit currency, a male member of the victim's group attempted to snatch it away. Townsend then observed this male member pointing a gun at Spain.[2] Townsend reached for his weapon and began firing. Then Spain began firing. As the shots rang out, the victim was ordered to drive away. The vehicle lurched forward, but the victim was shot and mortally wounded. Everyone but the victim fled the scene.

{¶ 12} Spain's sentencing memorandum argued that substantial grounds existed to mitigate his conduct and presented arguments based on his youthfulness. Spain attached to his memorandum numerous letters from various persons who had known him throughout his life vouching for his good character.

{¶ 13} At sentencing, Sergeant McCroskey spoke and noted that Spain's sentencing memorandum presented a very accurate description of the offense. Sergeant McCroskey wanted the court to be aware that the investigators had contact with Spain and his family since the offense and that he had been "repeatedly caught with firearms" during this time, including during his arrest, years after the shooting. Sergeant McCroskey asked the court to consider this out of concern for public safety.

---

2. Spain's sentencing memorandum draws in part on statements described in Townsend's interview with police.

{¶ 14} The court then announced its sentencing decision. At the outset, the court noted that it had considered many factors in imposing sentence, including Spain's age at the time of the offense. However, it also noted that despite Spain claiming to have matured since the offense date in 2018, he was repeatedly found with firearms. The court noted that Spain had been adjudicated a delinquent child in the Clermont County Court of Common Pleas, Juvenile Division, for a weapons under disability charge that stemmed from a felony theft charge that occurred in 2019. The court did not believe Spain's claim, as set forth in his sentencing memorandum, that he had lived a law-abiding lifestyle since the shooting occurred when he was 14. The court further found that Spain had not demonstrated genuine remorse.

{¶ 15} The court imposed a ten-year term of mandatory incarceration on the involuntary manslaughter charge and a three-year term of incarceration on the firearm specification to be run prior to and consecutive to the sentence on the involuntary manslaughter charge. The court also noted that it was presented with a restitution amount of $14,024.78 for funeral expenses for the victim's mother. The court asked Spain's counsel if he had any objection to restitution, and counsel indicated that Spain was indigent and asked the court to take that under consideration. The court then ordered that Spain pay restitution in the amount of $14,024.78. Spain appealed and has raised two assignments of error.

## II. Law and Analysis

### A. Sentencing Errors

{¶ 16} Spain's first assignment of error states:

THE TRIAL COURT COMMITTED SENTENCING ERROR.

{¶ 17} Spain raises three issues for review under his first assignment of error. We will address these issues in turn.

**1. First Issue for Review—Consideration of Youth-Mitigation Factors**

{¶ 18} For his first issue, Spain contends that the trial court disregarded mandatory sentencing factors in imposing his sentence. Specifically, Spain contends that the court disregarded the factors set forth in R.C. 2929.19(B)(1)(b), which requires a court to consider various factors relating to "youth and its characteristics" if an offender was under 18 years of age when an offense was committed.

**a. Standard of Review—Felony Sentences**

{¶ 19} R.C. 2953.08(G)(2) defines the standard of review for felony-sentencing appeals. *State v. Day*, 2021-Ohio-164, ¶ 6 (12th Dist.). As applicable here, R.C. 2953.08(G)(2) provides:

> The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> That the sentence is otherwise *contrary to law.*

(Emphasis added.)

**b. Analysis**

{¶ 20} Spain argues that his sentence is "contrary to law" because the trial court disregarded the R.C. 2929.19(B)(1)(b) youth-mitigation factors. R.C. 2929.19 governs sentencing hearings, generally. In 2021, the General Assembly enacted R.C. 2929.19(B)(1)(b). The statute provides that:

> (B)(1) At the sentencing hearing, the court, before imposing sentence, shall do all of the following:
> . . .
>
> (b) If the offense was committed when the offender was under eighteen years of age, in addition to other factors considered,

consider youth and its characteristics as mitigating factors, including:

(i) The chronological age of the offender at the time of the offense and that age's hallmark features, including intellectual capacity, immaturity, impetuosity, and a failure to appreciate risks and consequences;

(ii) The family and home environment of the offender at the time of the offense, the offender's inability to control the offender's surroundings, a history of trauma regarding the offender, and the offender's school and special education history;

(iii) The circumstances of the offense, including the extent of the offender's participation in the conduct and the way familial and peer pressures may have impacted the offender's conduct;

(iv) Whether the offender might have been charged and convicted of a lesser offense if not for the incompetencies associated with youth, such as the offender's inability to deal with police officers and prosecutors during the offender's interrogation or possible plea agreement or the offender's inability to assist the offender's own attorney;

(v) Examples of the offender's rehabilitation, including any subsequent growth or increase in maturity during confinement.

{¶ 21} Thus, R.C. 2929.19(B)(1)(b) requires that if an offender was under the age of 18 at the time of the felony offense, a trial court must consider "youth and its characteristics as mitigating factors" in imposing sentence. The statute further provides a non-exhaustive and exemplary list of specific factors to be considered.

{¶ 22} Spain argues that the trial court disregarded the R.C. 2929.19(B)(1)(b) youth-mitigation factors because (1) neither the court nor the parties ever explicitly referred to the youth-mitigation factors at the sentencing hearing or in the sentencing memorandum, and (2) the PSI did not mention the factors.

{¶ 23} However, there is no language in R.C. 2929.19(B)(1)(b) that requires a trial court to issue express findings as to the youth-mitigation factors. Nor is there language

requiring the court to explicitly acknowledge consideration of those factors. In this respect the statute is similar to R.C. 2929.11 and 2929.12. Those statutes require trial courts to consider the overriding purposes of felony sentencing and various seriousness and recidivism factors but do not include any language requiring a trial court to make any specific findings or use specific language to demonstrate that it considered those purposes and factors. *State v. Martin*, 2021-Ohio-4246, ¶ 25 (12th Dist.). As a result, we have held that R.C. 2929.11 and 2929.12 do not require trial courts to make specific findings or use specific language regarding their consideration of the purposes and factors outlined in the statute. *State v. Motz*, 2020-Ohio-4356, ¶ 43 (12th Dist.). Instead, in cases where a court's consideration of the purposes and factors has been challenged, we have held that the law only requires that the record demonstrates that the trial court properly *considered* the purposes and principles of sentencing as well as the seriousness and recidivism factors. *Id.*, citing *State v. King*, 2019-Ohio-1492, ¶ 9 (12th Dist.). *Accord State v. Van Tielen*, 2016-Ohio-1288, ¶ 14 (12th Dist.).

{¶ 24} The question of what constitutes appropriate consideration of the youth-mitigation factors of R.C. 2929.19(B)(1)(b) is a matter of first impression in this district. In assessing the trial court's consideration of the R.C. 2929.19(B)(1)(b) factors, we will follow the same method we use in analyzing consideration of the R.C. 2929.11 and 2929.12 purposes and factors. That is, we will review the record to determine whether the trial court properly considered the R.C. 2929.19(B)(1)(b) factors.[3]

---

3 Other districts that have reviewed this specific issue have determined that the trial court need not expressly specify its findings regarding the R.C. 2929.19(B)(1)(b) youth-mitigation factors, and that appellate review is limited to reviewing the record to determine whether it "affirmatively shows the court failed to consider those factors." *State v. Spears*, 2023-Ohio-187, ¶ 40 (5th Dist.); *State v. Bush*, 2023-Ohio-4473, ¶ 192-193 (3d Dist.); *State v. Spencer*, 2023-Ohio-3359, ¶ 24 (8th Dist.); *State v. Bryant*, 2024-Ohio-1192, ¶ 36 (2d Dist.). This "fail-to-consider" method differs from our case law addressing review of consideration of the R.C. 2929.11 and 2929.12 purposes and factors in that we review the record to determine whether the trial court *considered* the purposes and factors, not whether the record shows that

{¶ 25} Upon review of the record, which includes our review of the PSI, the sentencing memorandum, and the oral statements made to or by the court at the sentencing hearing, we conclude that the record demonstrates that the trial court considered the R.C. 2929.19(B)(1)(b) youth-mitigation factors.

{¶ 26} First, Spain's sentencing memorandum discussed the mitigating effects of his youth at length and touched on nearly every factor in R.C. 2929.19(B)(1)(b), though without specifically citing the statute. In sum, Spain noted that he was only 14 years old at the time of the offense and "just a kid" when the offense occurred. He noted that he was impressionable and immature and idolized his older brother and his older brother's friends. He asserted that when his brother and his brother's friend devised a scheme, he went along with it and was a "child" following the example of his adult role models. Spain argued that if he had been brought to justice at the age of 14, he would have been "amenable" to the juvenile justice system and his sentence could not have exceeded his "age out" date of six and a half years later. While acknowledging that his actions were "grievous," Spain requested that the court "take his age, his naivete, his immaturity, and the surrounding circumstances at the time of the offense into consideration when formulating his sentence."

{¶ 27} Second, the PSI contained relevant information pertaining to Spain's youthfulness, including his history of involvement in the juvenile justice system and his personal and familial history, including his childhood.

{¶ 28} Third, the trial court's statements at the hearing reflect that the court repeatedly focused on Spain's youth at the time of the offense as a consideration in

---

the trial court *failed* to consider the purposes and factors. In reviewing a trial court's consideration of the R.C. 2929.19(B)(1)(b) factors, we see no reason to diverge from our method of reviewing the R.C. 2929.11 and 2929.12 purposes and factors. R.C. 2929.19(B)(1)(b) requires the court to consider the youth-mitigation factors. So, we review the record to determine whether the trial court considered those factors.

sentencing. The court stated:

> The Court has considered the record and the overriding purposes of felony sentencing, which is to protect the public from future crime and to punish the offender and to promote the effective rehabilitation of the offender using the minimum sanctions needed to accomplish the purposes without imposing an unnecessary burden on state or local government resources. I've also considered the seriousness and recidivism factors set forth in Revised Code Sections 2929.11 and 2929.12.
>
> I've also considered the information contained in the presentence investigation, the victim impact statement, the number of statements -- victim impact statements that the Court received in regard to this matter. I also considered the sentencing memorandum filed by Mr. Rubenstein in regard to this case, considered the statements of Counsel, the statements of Mr. Spain this morning, the statements of Mr. Burress, the victim's mother in regard to this, Sgt. McCroskey.
>
> * *
>
> I don't understand young people and guns, and we see it more and more, the kids get younger and younger, and I just, quite frankly, don't understand why everybody thinks it's so much fun or so important to carry a gun. Without those guns, this tragedy probably doesn't occur. The gun inside the vehicle, the gun that Mr. Spain had, the gun that Mr. Townsend had, this probably doesn't happen.
>
> * *
>
> And in reviewing the sentencing memorandum, I am mindful that this young man was 14 years old when this happened. If he had gone to the police shortly after this happened and told them his involvement in this and how he was subjected to peer pressure in being handed the gun that evening, then maybe this case turns out differently for everybody. It turns out differently for this Defendant, and maybe he would've been subject to adjudication in the juvenile court system as a 14-year-old without much of a significant record at that time.
>
> And I know that [defense counsel] has argued that if Mr. Spain had been brought to justice at age 14, that he would've been amenable to the juvenile system. But I said that the only way for that to have happened over the course of the past several years was for him to have contacted the police and turned himself in and confessed to what he did, and that never

- 10 -

happened.

Counsel states that he was a child following the example of his adult role models. Yet after this in 2020, when he was just 16 years old, he was adjudicated a delinquent child in the Clermont County Juvenile Court for weapons under a disability charge related to a felony theft charge that occurred in that same court in 2019, obviously after this incident occurred.

And as pointed out and what disturbs me when he was arrested on this charge, he was in possession of a weapon yet again. And clearly he has not learned his lesson and has little concern for the dangers of being armed with a weapon, despite what happened in July of 2018 when he began firing his weapon.

And his juvenile record, it's not extensive. But to this Court's mind, it is more extensive than what has been represented, the felony theft, the weapons under disability charge, the two suspended commitments to the Department of Youth Services.

So I'm not convinced that after all this happened, after he turns 18 as an adult that he has focused on his life with a new and more mature perspective when he is arrested for this offense and has a firearm in his possession. That to me is not living a law-abiding lifestyle, and I don't understanding having been involved in this case, Mr. Spain, when you were 14, not -- I'm sure nobody meant for any of this stuff to happen, but for being involved in this case when you were age 14 to be caught with a weapon when you were 16, to be caught with a weapon when you were arrested for this charge, it makes no sense to me, and I can't imagine any circumstance for which you would need to be armed with a weapon or have a weapon in your possession, especially since the law prohibits you from owning, possessing, or using a firearm based upon that felony-level theft conviction for which you were adjudicated.

And I know that the family has talked about requesting mental health treatment for this young man, but I don't know that he's ever sought out any mental health treatment on his own. It appears that the only time it's ever happened is when he's gone to court and been in trouble, and it's the only time it's been requested. So I don't know if he needs mental health treatment. Something needs to be done because he needs to have some sort of corrective thinking in regard to his actions and being armed with a firearm.

> As I said, this is a difficult case. He was 14 years old when this happened. But in this Court's mind, his actions certainly weren't that of a child, being armed with a weapon and firing indiscriminately into a vehicle and striking the victim and killing her.

{¶ 29} Based upon the court's comments at sentencing, it is evident that the court considered Spain's "youth and its characteristics as mitigating factors" before imposing sentence. R.C. 2929.19(B)(1)(b). Spain has not demonstrated error.

{¶ 30} Spain directs us to two cases, cited previously in footnote three, in which courts of appeals reversed sentences because trial courts "disregard[ed]" the R.C. 2929.19(B)(1)(b) youth-mitigation factors. *Spears*, 2023-Ohio-187; and *Bush*, 2023-Ohio-4473. In *Spears*, in reviewing an argument that the trial court failed to consider the youth-mitigation factors, the Fifth District Court of Appeals first considered the PSI filed in the case. *Id*. at ¶ 42-48. The appeals court noted that while the PSI contained a description of the facts leading to the charges and the investigation, "it does not contain information that could be interpreted as a review of youth and its characteristics and the specific elements listed in R.C. 2929.19(B)(1)(b)." *Id*. at ¶ 48. The court also "reviewed the balance of the record" but found "no information that could be considered by the trial court to fulfill the obligation imposed by Revised Code 2929.19(B)(1)(b)." *Id*. Based on this analysis, the Fifth District found that the record affirmatively demonstrated that the trial court did not consider the youth-mitigation factors and on this basis reversed and remanded the matter for resentencing. *Id*. at ¶ 49.

{¶ 31} In *Bush*, the Third District Court of Appeals stated it found "no indication that the trial court adequately complied with its obligation to carefully consider Bush's 'youth and its characteristics as mitigating factors' before imposing sentence." 2023-Ohio-4473 at ¶ 193. The trial court in *Bush* did not discuss whether there was evidence in the record that related to Bush's youthfulness or the youth-mitigation factors. Moreover, the appeals

- 12 -

court noted that the trial court had found that Bush's breach of a plea agreement was an aggravating factor, whereas, under R.C. 2929.19(B)(1)(b)(iv), "such a situation may potentially be considered as a factor in mitigation of sentence." (The [B][1][b][iv] section addresses whether the offender might have been charged and convicted of a lesser offense if not for the "incompetencies associated with youth."). *Id*. In addition, the Third District noted that while the trial court had explicitly referred to the R.C. 2929.11 and 2929.12 purposes and factors, it had not referred to the youth-mitigation factors. *Id*. For these reasons the Third District found that the record "affirmatively shows that the trial court did not consider the factors listed under R.C. 2929.19(B)(1)(b), which renders Bush's sentence clearly and convincingly contrary to law." *Id.* at ¶ 194.

{¶ 32} The state directs us to a different case, also cited above, decided by the Second District Court of Appeals. *Bryant*, 2024-Ohio-1192. In *Bryant*, the defendant-appellant argued that "'the trial court did not discuss, recite, or comply with the mandatory requirements'" of R.C. 2929.19(B)(1)(b). *Id*. at ¶ 35, quoting Bryant's appellate brief. But the appeals court rejected this argument, holding that despite the absence of any specific mention of the youth-mitigation factors, the record "confirms that there was evidence pertaining to them before the court." *Id*. at ¶ 38. Specifically, the appeals court noted that the record contained Bryant's PSI, which included his history in the juvenile justice system, his social and family history, and a police report. *Id*. The appellate court found that in addition to considering the PSI, the trial court discussed Bryant's juvenile offenses involving acts of violence and specifically noted that it was especially troubled that Bryant had been involved in this type of behavior at his young age. *Id*. The trial court had remarked that Bryant's offense "isn't just an immature decision . . . it's an intentional decision." *Id*.

{¶ 33} In addition, the Second District noted that the record contained a forensic

evaluation by a doctor, which discussed "several" of the youth-mitigation factors and "went into detail about Bryant's mental and emotional health, how his maturity level compared to his peers, his history, and [the doctor's] opinion about his amenability." *Id*. at ¶ 39. Ultimately, the Second District held that "[b]ased on the statements made at the sentencing hearing and other evidence in the record, we cannot say that the record affirmatively demonstrates that the court failed to consider the R.C. 2929.19(B)(1)(b) factors." *Id*. at ¶ 40.

{¶ 34} The case before us tracks more closely to *Bryant* than to *Spears* and *Bush*. Unlike *Spears* and *Bush*, our record contains evidence relevant to a consideration of the youth-mitigation factors. Like *Bryant*, our record contains statements by the trial court and the parties at the sentencing hearing relating to youth as a mitigating factor and a PSI that contained relevant information about Spain's youth and related characteristics. In addition, Spain's sentencing memorandum contained even more information related to these factors than was present in *Bryant*.

{¶ 35} The record demonstrates that the trial court considered the R.C. 2929.19(B)(1)(b) youth-mitigation factors. We do not find that Spain's sentence was clearly and convincingly contrary to law in this respect. We therefore find no merit to Spain's first issue for review.

### 2. Second Issue for Review—Due Process

{¶ 36} For his second issue for review, Spain contends that the trial court violated his due process rights by "relying on materially false information, at least in part, to impose a sentence." Spain cites *Townsend v. Burke*, 334 U.S. 736 (1948) in support. In *Townsend*, the United States Supreme Court held that a trial court denied a defendant due process of law where the court sentenced him based on "materially untrue" assumptions about his criminal record. *Id*. at 740-741.

{¶ 37} Spain contends that at sentencing, the prosecutor and Sergeant McCroskey emphasized that Spain was a threat to the public because he was repeatedly found to be carrying firearms after the offense. Spain asserts that the trial court commented on this at the sentencing hearing when it stated:

> not -- I'm sure nobody meant for any of this stuff to happen, but for being involved in this case when you were age 14 to be caught with a weapon when you were 16, to be caught with a weapon when you were arrested for this charge, it makes no sense to me, and I can't imagine any circumstance for which you would need to be armed with a weapon or have a weapon in your possession, *especially since the law prohibits you from owning, possessing, or using a firearm based upon that felony-level theft conviction for which you were adjudicated.*

(Emphasis added.) While Spain admits that he was adjudicated delinquent for felony theft, he argues that the court's statement that he was prohibited from owning or possessing a firearm due to the felony theft adjudication was not accurate. He contends that felony theft is not a disabling offense under R.C. 2923.13(A) (the statute that sets forth the circumstances that can disable an individual from owning or possessing a firearm), that Spain had a constitutional right to possess a firearm, and that the trial court's statement was "materially false."

{¶ 38} Spain's PSI reflects a June 3, 2020 adjudication for third-degree felony weapons under disability in the Clermont County juvenile court. There is no other information in the record concerning this case or the reason that Spain was, prior to this adjudication, placed under disability from owning or possessing a weapon.

{¶ 39} The state concedes that felony theft is not a disabling offense under R.C. 2923.13(A)(2) and that the trial court's comment about felony theft being the basis for Spain's weapons under disability adjudication was perhaps a "misstatement." However, the state asserts that Spain could have been placed under disability through the other

means set forth in the statute, such as being a fugitive from justice (R.C. 2923.13[A][1]), or having a drug dependency (R.C. 2923.13[A][4]). The state asserts that the trial court's comments here were more focused on the fact that Spain continued to carry firearms well after the homicide.

{¶ 40} Upon our review of the record, we do not find any due process violation like that which occurred in *Townsend*. The import of the court's comment was that Spain was engaging in delinquent activity and repeatedly found to be carrying a firearm, well after the homicide. Critically, the record supports the conclusion that Spain *was* placed under disability to own or possess a weapon because he was adjudicated for the offense of weapons under disability in 2020. The *reason* that Spain was placed under disability was not a "material" aspect of the trial court's sentencing process. Rather, it was the fact of his disability and his disregard of the criminal justice system that was the focus of the court's commentary. Therefore, we find no violation of due process based upon the court's commentary, and we find no merit to Spain's second issue for review.

### 3. Third Issue for Review—Restitution

{¶ 41} The court sentenced Spain on November 1, 2023. As part of the sentence the court ordered Spain to make restitution to the victim's mother of $14,024.78 for the victim's funeral expenses. According to a sentencing entry that Spain attached to his appellate brief, Spain's co-defendant, Townsend, was subsequently sentenced on November 15, 2023. [4]  It appears Townsend was sentenced for the same offense and firearm specification as Spain, and that Townsend was, like Spain, ordered to make restitution to the victim's mother of $14,024.78. However, unlike Spain's restitution order, Townsend's restitution order was joint and several with Spain's.

---

4. Townsend's sentencing entry is not in our record on appeal. Spain has made no argument as to why we can consider this entry in resolving this third issue.

{¶ 42} For his third issue for review, Spain argues that it was error for the trial court not to make his order of restitution joint and several with Townsend to prevent the victim's mother from obtaining a double recovery or a windfall. Spain notes that R.C. 2929.18(A)(1) provides that restitution may not exceed the victim's economic loss.

{¶ 43} Spain cites *State v. Becraft*, 2017-Ohio-1464 (2nd Dist.), for the proposition that orders for restitution from codefendants should be joint and several to prevent a double recovery. *Becraft* at ¶ 24. The state also cites *Becraft*, asserting that the apportionment of restitution between codefendants is permissible and the court was not required to impose joint and several liability as to Spain. Indeed, *Becraft* states:

> Although R.C. 2929.18 does not require apportionment of restitution among co-defendants, the statute does not prohibit apportionment. *Becraft* at ¶ 30, citing *State v. Kline*, 3d Dist. Henry No. 7-12-03, 2012-Ohio-4345, ¶ 12. However, "there is no requirement that co-defendants receive equal sentences. Each defendant is different and nothing prohibits a trial court from imposing two different sentences upon individuals convicted of similar crimes." (Citation omitted.) *State v. Kosak*, 2d Dist. Greene No. 2013 CA 67, 2014-Ohio-2310, ¶ 21. "We have held that where co-defendants act in concert in committing the same offense that causes economic harm to the victim, holding one of the defendant[s] responsible for the full amount of restitution is permissible and consistent with established principles of tort liability[.]" (Citations omitted.) *State v. Dawson*, 2d Dist. Montgomery No. 21768, 2007-Ohio-5172, ¶ 13.

*Id.* at ¶ 20.

{¶ 44} *Becraft* is distinguishable from the situation presented here. This is not a case where the court apportioned restitution between codefendants or where one of several codefendants was ordered to make full restitution. Here, both codefendants were ordered to make full restitution.

{¶ 45} We review a restitution order for whether that order is clearly and convincingly contrary to law under R.C. 2953.08(G)(2). *State v. Geldrich*, 2016-Ohio-

3400, ¶ 6 (12th Dist.) Upon our review, we do not find that the restitution order was contrary to law. Spain was the victim's killer, and the trial court could lawfully order him to be responsible for making full restitution to compensate for the victim's economic loss in the form of funeral expenses. R.C. 2929.18(A)(1). In other words, the court's order was not erroneous when it was made on November 1, 2022 and journalized on November 2, 2023. If error occurred in ordering restitution, that error may have been in Townsend's case as the trial court had already ordered Spain to make full restitution. But that issue is not before us. Spain has not demonstrated error with respect to the restitution award, and we find no merit to Spain's third issue for review.

{¶ 46} For the foregoing reasons, we overrule Spain's first assignment of error.

## B. Ineffective Assistance of Counsel

{¶ 47} Spain's second assignment of error states:

TRIAL COUNSEL WAS INEFFECTIVE AT SENTENCING.

{¶ 48} In support of this assignment of error, Spain describes his issues for review as:

> Trial counsel was unreasonable for i) failing to raise the juvenile factors, and ii) failing to alert the trial court to its false impression about Spain's nonexistent firearms disability, and iii) failing to ensure the restitution sanction was joint-and-several to permit setoffs and prevent a windfall.

{¶ 49} Thus Spain has presented his issue for review as the failure to raise the same three issues that he raised in his first assignment of error. However, in the body of his brief, Spain presents no argument concerning the second and third issues. Spain's only argument presented is that his counsel was ineffective by failing to argue the R.C. 2929.19(B)(1)(b) youth-mitigation factors at sentencing. Spain has an obligation to present argument and support it with citations to the record. App.R. 12(A)(2) and App.R. 16(A)(7). Because he has failed to present any argument as to ineffective assistance of

counsel related to the second and third issues, we disregard those issues. *See State v. Bowling*, 2024-Ohio-1638, ¶ 4-5 (12th Dist.).

{¶ 50} To prevail on an ineffective assistance of counsel claim, Spain must show his defense counsel's performance was deficient, and that he was prejudiced as a result. *State v. Clarke*, 2016-Ohio-7187, ¶ 49 (12th Dist.); *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Defense counsel's performance will not be deemed deficient unless it fell below an objective standard of reasonableness. *Strickland* at 688. To show prejudice, Spain must establish that, but for his trial counsel's errors, there is a reasonable probability that the result of his trial would have been different. *Id.* at 694. The failure to satisfy either prong of the *Strickland* test is fatal to an ineffective assistance of counsel claim. *Clarke* at ¶ 49. We strongly presume that defense counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *State v. Burns*, 2014-Ohio-4625, ¶ 7 (12th Dist.). It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence . . . ." *Strickland* at 689.

{¶ 51} In response to Spain's first assignment of error, we found that the record supported the conclusion that the trial court considered the R.C. 2929.19(B)(1)(b) youth-mitigation factors at sentencing. Furthermore, we noted that Spain's counsel did in fact present argument as to the mitigating effects of Spain's youth in the sentencing memorandum. We can therefore discern nothing in the record suggesting that his trial counsel provided ineffective assistance in this regard.

{¶ 52} Moreover, Spain has not demonstrated how he suffered prejudice. We can discern nothing in the record that would allow us to find a reasonable probability of a changed outcome had Spain's counsel specifically raised the R.C. 2929.19(B)(1)(b) youth-mitigation factors at sentencing. The court addressed Spain's youth as a mitigating

factor in imposing sentence. Accordingly, we overrule Spain's second assignment of error.

### III. Conclusion

{¶ 53} For all these reasons, Spain has not demonstrated error in his sentence or ineffective assistance of counsel.

{¶ 54} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.