[Cite as *In re J.R.*, 2025-Ohio-2271.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

|  |  |  |
|---|---|---|
| IN RE: | : | |
| J.R. | : | CASE NO. CA2024-09-008 |
| | : | OPINION AND JUDGMENT ENTRY 6/30/2025 |
| | : | |
| | : | |
| | : | |

APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 20242071

Zachary A. Corbin, Brown County Prosecuting Attorney, and Mary McMullen, Assistant Prosecuting Attorney, for appellee.

Office of the Ohio Public Defender, and Victoria Ferry, Assistant Public Defender, for appellant.

## O P I N I O N

**BYRNE, J.**

{¶ 1} J.R., a minor, appeals from his delinquency adjudication for rape and its corresponding discretionary serious-youthful-offender ("SYO") dispositional sentence in

the Brown County Court of Common Pleas, Juvenile Division. He challenges both the validity of his admission to the rape charge and the effectiveness of his trial counsel. For the below reasons, we affirm.

## I. Factual and Procedural Background

**{¶ 2}** On April 19, 2024, J.R., then 12 years old, took a seven-year-old girl behind a tree and digitally penetrated her vagina twice. The incident was promptly reported. An investigation ensued, including a forensic interview of the girl and an interview of J.R. by detectives. J.R. admitted to detectives what he had done.

**{¶ 3}** On May 1, 2024, an indictment was filed in the Brown County juvenile court charging J.R. with one count of rape in violation of R.C. 2907.02(A)(2). This offense was a first-degree felony if committed by an adult, and was subject to a discretionary SYO dispositional sentence under R.C. 2152.13.[1] J.R.'s appointed counsel requested discovery and filed a suggestion of incompetency. After evaluation, the parties stipulated to the competency report, and the court found J.R. competent to stand trial. Defense counsel also requested a psychological evaluation regarding J.R.'s risk of sexually offending. That evaluation was later provided to the court.

**{¶ 4}** In the juvenile context, an "admission" is analogous to a guilty plea, and a "disposition" is analogous to an adult criminal sentence but with the contrasting goal of rehabilitation. *See In re C.S.*, 2007-Ohio-4919, ¶ 106, 112 (admission/plea); *State v. D.H.*, 2009-Ohio-9, ¶ 18, 54 (sentence/disposition). An SYO dispositional sentence is "a blended sentence that consists of a juvenile disposition coupled with a stayed adult sentence." *State v. Nicholas*, 2022-Ohio-4276, ¶ 38; *see* R.C. 2152.13(D). "The court

---

1. Complaints had been previously filed on April 23, 2024, incorrectly charging J.R. with rape under R.C. 2907.02(A)(1) as well as with gross sexual imposition under R.C. 2907.05(A)(4). A day later, the grand jury indicted him for rape under R.C. 2907.02(A)(2). At the May 1 arraignment, the State filed the indictment and the original charges were dismissed.

may enforce the adult portion of the sentence at a later time if the juvenile commits certain acts that indicate that the juvenile disposition has been unsuccessful in rehabilitating him." *State v. D.H.*, 2009-Ohio-9, ¶ 2, citing R.C. 2152.14. "Basically," when a court determines a juvenile disposition alone insufficiently serves the statutory purposes of juvenile disposition, it may impose a stayed adult sentence. *Id.* at ¶ 25. *See also* R.C. 2152.13(D)(2)(a)(i). In this case, the combination of J.R.'s offense and age left the juvenile court with the discretion to impose such a blended sentence. *See* R.C. 2152.11(D)(2)(c).

**{¶ 5}** The case proceeded to adjudication on August 8, 2024. Under an admission agreement, J.R. entered an admission to the rape charge and agreed to the discretionary SYO dispositional sentence (which the admission form referred to as an SYO "specification"). Before accepting the admission, the juvenile court conducted a colloquy with J.R. The court explained his rights, the rights he would be waiving by entering an admission, and the potential consequences of his admission, including both the juvenile disposition and the potential adult sentence under the SYO disposition.

**{¶ 6}** The juvenile court then adjudicated J.R. delinquent. The court, in the context of applying the discretionary SYO dispositional sentence, imposed (1) a juvenile dispositional sentence of a minimum one-year commitment to the Department of Youth Services with a maximum commitment until his 21st birthday, and (2) a stayed adult prison term of six years, which would be invoked only if J.R. failed to successfully complete his juvenile disposition.

**{¶ 7}** J.R. appealed, raising two assignments of error.

## II. Analysis

### A. The validity of J.R.'s admission

**{¶ 8}** The first assignment of error alleges:

J.R.'S ADMISSION WAS NOT KNOWING, INTELLIGENT,

- 3 -

AND VOLUNTARY, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION; AND JUV.R. 29.

{¶ 9} J.R.'s first assignment of error concerns the validity of his admission to rape. Because J.R. was charged as a serious youthful offender under R.C. 2152.13, both Juv.R. 29(D), governing admissions in juvenile proceedings, and Crim.R. 11(C), governing guilty pleas in adult felony cases, apply to his admission. R.C. 2152.13(C)(2) provides that when a juvenile is charged with an SYO dispositional sentence, "[a]ll provisions of Title XXIX of the Revised Code and the Criminal Rules shall apply in the case and to the child." Juv.R. 29 and Crim.R. 11 require that the trial court personally address the individual to determine that the admission or plea is made voluntarily, intelligently, and knowingly. *In re C.S.*, 2007-Ohio-4919, at ¶ 106. However, J.R. has not raised any argument regarding failure to comply with Crim.R. 11(C), so we do not address that rule in this opinion.

{¶ 10} As we said, Juv.R. 29(D) places an affirmative duty on the juvenile court to personally address the juvenile and determine that the juvenile's admission is entered voluntarily, intelligently, and knowingly. The rule provides:

> The court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following:
>
> (1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;
>
> (2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing.
>
> . . .

Juv.R. 29(D).

{¶ 11} As established in *In re C.S.*, Juv.R. 29(D) requires that "the juvenile subjectively understood the implications of his plea" and that the juvenile court adequately safeguarded the constitutional guarantees of due process that the rule is designed to protect. *In re C.S.*, 2007-Ohio-4919, at ¶ 113. The compliance inquiry focuses on the totality of the circumstances. *Id.*

{¶ 12} In the case before us, the transcript reveals that the court personally addressed J.R. and engaged him in a detailed colloquy. The court explained the nature of the allegations against J.R. and outlined the potential sentences he faced. In doing so, the court carefully explained both the juvenile disposition he faced and the potential adult sentence under the SYO disposition. The court specifically informed J.R. that he could receive a commitment to the Department of Youth Services for a minimum of 12 months to a maximum of his 21st birthday, as well as a potential adult sentence of three to 11 years in prison, which would be stayed pending successful completion of his juvenile disposition. The court also ensured he understood the rights he was waiving by entering his admission—the right to trial, to remain silent, to testify at trial, to subpoena people and question them, to have the state prove its case beyond a reasonable doubt, and to be presumed innocent of the charge.

{¶ 13} J.R. makes two arguments. First, he argues that the juvenile court failed to satisfy Juv.R. 29(D) because, during the colloquy, it did not discuss certain "special procedural protections and findings required for [SYO] discretionary specification," which J.R. described in his appellate brief as follows:

- That the child for whom a serious youthful offender dispositional sentence is sought by a prosecuting attorney has the right to a grand jury determination of probable cause that the child committed the act charged. *See* R.C. 2152.13(C)(1).
- The grand jury may be impaneled by the court of common pleas or the

juvenile court. *Id.*

- Once a child is indicted, or charged by information or the juvenile court determines that the child is eligible for a serious youthful offender dispositional sentence, the child is entitled to an open and speedy trial by jury in juvenile court and to be provided with a transcript of the proceedings. *Id.*

- In the absence of a jury, only a judge may conduct a serious youthful offender proceeding. Juv.R. 40(C)(1).

- If the child is detained awaiting adjudication, upon indictment or being charged by information, the child has the same right to bail as an adult charged with the offense the alleged delinquent act would be if committed by an adult. R.C. 2152.13(C)(2).

- The juvenile court shall afford the child all rights afforded to a person who is prosecuted for committing a crime, including the right to counsel and the right to raise the issue of competency. *Id.*

- The child may not waive the right to counsel. R.C. 2152.13(C)(2); Juv.R. 3(A)(2).

- If a child is adjudicated a delinquent child for committing an act under circumstances that allow, but *do not require*, the juvenile court to impose on the child a serious youthful offender dispositional sentence (discretionary SYO) under R.C. 2152.11, on the record, the juvenile court must make a finding that, given the nature and circumstances of the violation and the history of the child, the length of time, level of security, and types of programming and resources available in the juvenile system alone are not adequate to provide the juvenile court with a reasonable expectation that the purposes set forth in R.C. 2152.01 will be met. *See* R.C. 2152.13(D)(2)(a)(1). Only then may the juvenile court impose upon the child a sentence available for the violation, as if the child were an adult.

We will refer to these items as the "SYO Protections" in the remainder of this opinion.

**{¶ 14}** J.R.'s argument is based entirely on his theory that the SYO Protections are waived by an admission and therefore constitute "consequences of the admission" that must be explained under Juv.R. 29(D)(1). But we find that these SYO Protections are not "consequences of the admission" within the meaning of Juv.R. 29(D). Neither the SYO statute nor Juv.R. 29(D) require that the SYO protections be explained to the juvenile offender as part of a plea or admission colloquy.

**{¶ 15}** J.R. cites no statute or rule explicitly requiring such notifications. Nor does he cite any case law supporting his interpretation of Juv.R. 29(D). In fact, at oral argument, J.R.'s counsel admitted that she could locate no such case law. Nor have we located any

authority supporting J.R.'s argument. We conclude that there is no legal requirement that, during the Juv.R. 29(D) colloquy, a court inform a juvenile of the specific SYO Protections identified by J.R.

{¶ 16} Our conclusion is supported by the text of the rule. Juv.R. 29(D) states that a court conducting a juvenile admission colloquy must determine "*both* of the following," referring to the rule's two subsections. (Emphasis added.). The first subsection, Juv.R. 29(D)(1), requires the court to determine whether the juvenile understands "the consequences of the admission." The second subsection, Juv.R. 29(D)(2), requires the court to determine whether the juvenile "understands that by entering an admission the [juvenile] is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing."

{¶ 17} The SYO Protections identified by J.R. are not included in the enumerated list of protections that Juv.R. 29(D)(2) expressly requires a court to ensure the juvenile understands. This exclusion indicates the rule does not require a court to determine whether the juvenile understands the SYO Protections. J.R.'s alternative interpretation would transform Juv.R. 29(D)(1)'s reference to "the consequences of the admission" into an all-encompassing mandate requiring courts to verify a juvenile's understanding of every conceivable legal protection that might be affected by admission. This expansive reading would render Juv.R. 29(D)(2)'s careful enumeration meaningless surplusage. We must avoid interpretations that render the text of statutes or rules superfluous. *See* Scalia & Garner, *Reading Law: The Interpretation of Legal Texts*, § 26 (2012) (surplusage canon). We therefore conclude that Juv.R. 29(D) did not require the juvenile court to inform J.R. of the SYO Protections.

{¶ 18} Although we have determined that the juvenile court was not required to determine that J.R. understood the SYO Protections during the Juv.R. 29(D) colloquy, we

note that they were afforded to him or were properly waived by him. J.R. was indicted as a serious youthful offender by a grand jury, was appointed counsel, had a bond set, and was informed of his right to a jury trial. Additionally, to the extent J.R. complains that the court did not determine that he understood that the court was required to make certain SYO findings if he did not admit to rape, the record also shows that J.R. and his counsel stipulated to the SYO dispositional sentence as part of the plea agreement. When a juvenile stipulates to an SYO dispositional sentence, "the requisite findings [are] necessarily subsumed within that stipulation and adopted by the juvenile court." *In re J.R.R.*, 2008-Ohio-1380, ¶ 18 (9th Dist.).

{¶ 19} J.R.'s second argument raises concerns about a "yes bias" in children and adolescents—the tendency for children to answer affirmatively to yes-no questions regardless of their actual understanding. J.R. contends that juvenile courts should account for "yes bias," arguing that the court's use of yes-no questions was insufficient to ensure his understanding under Juv.R. 29(D). While we acknowledge the importance of developmentally appropriate communication with juveniles, there is no legal requirement that, during the Juv.R. 29(D) colloquy, a court consider the "yes bias" identified by J.R. J.R. cites no statute or rule explicitly requiring such consideration, nor does he cite any case law supporting his interpretation of Juv.R. 29(D), nor have we located any authority supporting J.R.'s argument. The rule itself does not require courts to consider a "yes bias," and we decline to impose such a requirement.

{¶ 20} In any event, the record shows that the juvenile court used language tailored to J.R.'s level of understanding and took specific steps to guard against any such bias. The transcript of the hearing shows that the juvenile court went beyond simple yes-no questions, engaged J.R. in conversation, encouraged him to ask questions, and responded thoughtfully when J.R. expressed confusion. Notably, the court specifically

told J.R. that he should not feel compelled to agree: "And please don't feel free to—forced to say yes. If it's confusing, tell me what—that I confused you." When J.R. later indicated that he did not understand an issue, the court explained it differently until J.R. expressed understanding, and the court thanked him for speaking up when confused. Thus the court did not merely solicit "yes" or "no" answers but engaged in a dialogue to ensure J.R.'s comprehension, an approach that reflects a conscientious effort to ensure that J.R.'s admission was knowing and voluntary, considering his age and cognitive development.

{¶ 21} J.R.'s two arguments, in essence, ask us to expand Juv.R. 29(D) requirements by requiring an explanation of the SYO Protections and requiring courts to account for "yes bias" in their colloquies with juveniles. We decline to do so.

{¶ 22} The first assignment of error is overruled.

### B. The ineffective-assistance-of-counsel claim

{¶ 23} The second assignment of error alleges:

> J.R. WAS DEPRIVED OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL. FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

{¶ 24} J.R. raises two specific instances of alleged ineffective assistance: (1) trial counsel's failure to advocate for a plea agreement that provided a benefit to J.R., and (2) trial counsel's failure to present mitigating factors associated with youth at the dispositional hearing.

{¶ 25} Claims of ineffective assistance of counsel are reviewed under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on such a claim, a defendant must show that (1) counsel's performance was deficient, meaning it fell below an objective standard of reasonable representation, and (2) the deficient performance prejudiced the defendant, meaning there is a reasonable

probability that, but for counsel's errors, the outcome of the proceeding would have been different. *Strickland* at 687; *State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989). "A defendant's failure to make an adequate showing on either prong is fatal to the defendant's ineffective assistance of counsel claim." *State v. Pennington*, 2024-Ohio-2020, ¶ 34 (12th Dist.).

### 1. Ineffective assistance during plea negotiations

**{¶ 26}** With respect to the plea negotiations, J.R. argues that his counsel failed to secure any benefit from the plea agreement, as he admitted to the highest degree of felony with an SYO dispositional sentence. J.R. contends that by entering this plea, he gave up his trial rights in exchange for no reduction in charges or potential sentence. The State responds that J.R. has not shown that his counsel's performance was deficient or that he suffered prejudice. The State points out that the record does not reflect whether counsel attempted to negotiate a more favorable plea and that the court itself noted counsel's advocacy on J.R.'s behalf.

**{¶ 27}** The U.S. Supreme Court has recognized that defendants are entitled to effective assistance of counsel during plea negotiations. *Missouri v. Frye*, 566 U.S. 134 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012). This includes the duty to communicate formal offers from the prosecution and to provide effective advice on whether to accept a plea offer. *Frye* at 145; *Lafler* at 168.

**{¶ 28}** We conclude that J.R. has not established ineffective assistance of counsel with respect to the plea negotiations. The record does not demonstrate what efforts, if any, counsel made to secure a more favorable plea agreement. But there is a "'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bradley*, 42 Ohio St.3d at 142, quoting *Strickland*, 466 U.S. at 689. And this presumption is not overcome merely because J.R. admitted to the charge as indicted.

*See State v. Ketterer*, 2006-Ohio-5283, ¶ 103.

**{¶ 29}** J.R.'s argument here rests on a flawed premise—that the measure of counsel's effectiveness lies in the ultimate terms of the plea agreement rather than the adequacy of the representation during negotiations. The record does not support this claim. There is no evidence about what plea negotiations, if any, occurred between defense counsel and the prosecution. The mere fact that J.R. admitted to the charge as indicted does not demonstrate that counsel failed to attempt to negotiate a more favorable plea or that such an attempt would have succeeded. There is simply nothing in the record that would allow us to conclude that J.R.'s trial counsel provided ineffective assistance.[2]

**{¶ 30}** Finally, J.R. has not demonstrated prejudice. To establish prejudice in the plea context, a defendant must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *State v. Hawks*, 2022-Ohio-4137, ¶ 21 (12th Dist.). J.R. has not alleged that he would have insisted on going to trial absent counsel's alleged errors. Given the evidence against J.R., including his confession and the interview with the victim, there is not a reasonable probability that the outcome would have been more favorable had he proceeded to trial.

**{¶ 31}** We conclude that J.R.'s ineffective-assistance argument related to plea negotiations lacks merit.

### 2. Ineffective assistance during the dispositional hearing

**{¶ 32}** As for the dispositional hearing, J.R. argues that his counsel failed to present any of the mitigating factors associated with youth as required by R.C. 2929.19(B)(1)(b). He contends that this failure deprived the court of information that could

---

2. We also note that the juvenile court expressed confidence in counsel's experience and competence. The court specifically told J.R. that defense counsel "has advocated for you at every level to try to explain your position and try to get the best scenario for you." This statement strongly suggests that counsel actively advocated on J.R.'s behalf throughout the proceedings. This contemporaneous assessment by the judge who observed counsel's performance firsthand further undermines J.R.'s claim of ineffectiveness.

have led to a more favorable disposition. The State argues that the extent to which counsel presents mitigation evidence is a matter of trial strategy, and that information about mitigating factors was available to the court through the presentence investigation report. We conclude that J.R. has failed to establish ineffective assistance of counsel with respect to the dispositional hearing.

{¶ 33} When an SYO dispositional sentence results in a potential adult sentence, R.C. 2929.19(B)(1)(b) requires the court to consider certain mitigating factors associated with youth, including (i) the juvenile's age and "that age's hallmark features, including intellectual capacity, immaturity, impetuosity, and a failure to appreciate risks and consequences"; (ii) the juvenile's family and home environment; (iii) "the circumstances of the offense, including the extent of the offender's participation in the conduct" and the impact of peer pressure; (iv) the juvenile's incompetencies in dealing with the criminal justice system; and (v) evidence of rehabilitation and growth during confinement.

{¶ 34} Strategic decisions are generally not grounds for finding ineffective assistance. *State v. Brewer*, 2021-Ohio-2289, ¶ 14 (12th Dist.). And the extent to which counsel presents mitigating evidence is a matter of trial strategy. *Id.* Such strategic choices made after thorough investigation "are virtually unchallengeable." *Strickland*, 466 U.S. at 690.

{¶ 35} The record here reveals that counsel took numerous steps to develop potential mitigating information, including requesting a competency evaluation and obtaining a psychological evaluation concerning J.R.'s risk of sexually offending and treatment options. Counsel also told the court that J.R. was in therapy and desired to continue therapy outside the Department of Youth Services. The selection of which mitigating factors to emphasize—and which to downplay—requires the exercise of professional judgment. Certain aspects of J.R.'s background, if examined too closely,

might have contradicted mitigating narratives or highlighted risk factors the court would find troubling. This is precisely the type of strategic assessment courts are reluctant to second-guess.

{¶ 36} In any event, J.R. cannot establish prejudice from counsel's alleged deficient performance. The court had before it a presentence-investigative report containing information relevant to the mitigating factors enumerated in R.C. 2929.19(B)(1)(b). The court was aware of J.R.'s youth, his participation in therapy, and his desire to continue treatment outside the Department of Youth Services. That the court nonetheless imposed a mid-range adult sentence (six years, within the statutory range of three to 11 years) as part of the SYO disposition suggests it found these factors outweighed by the gravity of the offense and other considerations. We find no evidence in the record suggesting that J.R.'s outcome would likely have been different if his counsel had specifically presented the youth-mitigation factors under R.C. 2929.19(B)(1)(b) during sentencing. *See State v. Spain*, 2025-Ohio-1121, ¶ 52 (12th Dist.) (concluding the same in that case).

{¶ 37} "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. The record before us does not suggest any such breakdown. J.R. has failed to demonstrate either deficient performance or resulting prejudice concerning his trial counsel's participation in the dispositional hearing.

{¶ 38} The second assignment of error is overruled.

### III. Conclusion

{¶ 39} Having overruled the assignments of error presented, the juvenile court's judgment is affirmed.

HENDRICKSON, P.J., and SIEBERT, J., concur.

_____
# J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Brown County Court of Common Pleas, Juvenile Division, for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Robert A. Hendrickson, Presiding Judge

/s/ Matthew R. Byrne, Judge

/s/ Melena S. Siebert, Judge